Calvin RHODES, Plaintiff–Appellee,

v.

GUIBERSON OIL TOOLS, Defendant–Appellant.

No. 92–3770.

United States Court of Appeals, Fifth Circuit.

Jan. 31, 1996.

Joseph L. Waitz, Jr., Waitz & Downer, Houma, LA, for plaintiff-appellee.

Thomas Joseph Lutkewitte, Joseph Paul Demarest, Favret, Demarest, Russo & Lutkewitte, New Orleans, LA, Felix J. Springer, Day, Berry & Howard, Hartford, CT, for defendant-appellant.

Douglas S. McDowell, McGuiness & Williams, Washington, DC, for Equal Employment Advisory Council, amicus curiae.

Jeffrey C. Londa, Hutcheson & Grundy, Houston, TX, for Texas Association of Business & Chambers of Commerce, amicus curiae.

Sidney Samuel Rosdeitcher, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Richard T. Seymour, Teresa Anne Ferrante, Lawyers' Committee for Civil Rights Under Law, Washington, DC, for Lawyers Committee for Civil Rights Under Law, amicus curiae.

Dori Kay Bernstein, EEOC, Washington, DC, for Equal Employment Opportunity Commission, amicus curiae.

Janette B. Johnson, National Employment Lawyers Association, Dallas, TX, for National Employment Lawyers Association, amicus curiae.

Before POLITZ, Chief Judge, and KING, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS, BENAVIDES, STEWART, PARKER and DENNIS, Circuit Judges.

W. EUGENE DAVIS and DUHÉ, Circuit Judges:

In this action under the ADEA for discriminatory discharge, we consider en banc the employer's appeal from the district court's denial of its motion for judgment notwithstanding the verdict (JNOV). We agree with the district court that the evidence is sufficient to support the verdict and affirm.[1]

## I.

Calvin Rhodes began his employment with Dresser Industries in 1955 as a salesman of products and services to the oil-industry. In

---

1. This case was tried before the effective date of the 1991 amendments to the Federal Rules of Civil Procedure. Rule 50 now uses the term "judgment as a matter of law" for both a directed verdict and a JNOV.

1986, the oil industry was in the throes of a severe economic downturn. In March of that year, in lieu of being laid off from his job at the Atlas Wireline Division of Dresser, Rhodes was offered a job selling oil field equipment at Compac, another Dresser company which subsequently became Guiberson Oil. Seven months later, on October 31, 1986, Guiberson Oil discharged Rhodes. At the time of his termination, Rhodes was fifty-six years old. In the severance report, Guiberson Oil stated that it had discharged Rhodes because of a reduction in work force and that it would consider rehiring him. Within two months, however, Guiberson Oil hired a forty-two-year-old salesman to do the same job.

Rhodes sued Guiberson Oil for violating the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (1988) ("ADEA"). A jury found that Guiberson Oil terminated Rhodes from his employment because of his age, but also found that Guiberson Oil had not willfully violated the ADEA.[2] On remand, the magistrate judge found that Rhodes had sustained damages in the amount of $188,866.70 as a result of Guiberson Oil's unlawful conduct.

Guiberson Oil prosecuted this appeal to challenge the judgment on grounds that it was not supported by sufficient evidence and the damages were excessive. A divided panel of this court agreed with Guiberson's sufficiency argument and reversed and rendered judgment for Guiberson. We took the case en banc to consider the sufficiency question in light of the Supreme Court's recent decision in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

## II.

Guiberson Oil contends that the evidence is insufficient to support the jury's finding of age discrimination and argues that the district court erred in not granting its motions for a directed verdict or judgment notwithstanding the verdict.

■ The Age Discrimination in Employment Act (ADEA) makes it "unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1) (1988). To establish a prima facie case of age discrimination, the plaintiff "must demonstrate that: (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of the discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir.1993).

■ Under the Supreme Court's *McDonnell Douglas–Burdine* framework, the plaintiff first must establish a prima facie case by a preponderance of the evidence; once established, the prima facie case raises an inference of unlawful discrimination.[3] *See Hicks* at ——, 113 S.Ct. at 2747; *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The burden of production then shifts to the defendant to proffer a legitimate, nondiscriminatory reason for

2. The parties stipulated that a magistrate judge would decide all issues except liability. Consequently, after the jury found that Guiberson Oil had discriminated against Rhodes, the magistrate judge dismissed Rhodes' case with prejudice because Rhodes, prior to bringing this action, failed to timely file a charge with the Equal Employment Opportunity Commission. Rhodes appealed the dismissal, contending that his suit was not time-barred. A panel of this court agreed, reversed the magistrate judge's decision setting aside the jury verdict, and remanded for a determination of damages. *See Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 876 (5th Cir.), *cert. denied*, 502 U.S. 868, 112 S.Ct. 198, 116 L.Ed.2d

158 (1991) [hereafter *Rhodes I*]. In so holding, the panel specifically noted that the question of whether the evidence supported the verdict was not before us. *Id.* at 887.

3. *McDonnell Douglas* and *Hicks* (race discrimination) and *Burdine* (gender discrimination) are Title VII cases. Although the ADEA was enacted by Congress as a separate statute, we nevertheless apply the *McDonnell Douglas–Burdine* framework within the ADEA context. *See Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 n. 4 (5th Cir.1993) ("The Fifth Circuit . . . has adopted the *St. Mary's* procedural roadmap for ADEA cases.").

the challenged employment action. *Hicks,* 509 U.S. at ——, 113 S.Ct. at 2747; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. The defendant may meet this burden by presenting evidence that, *"if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment action." *Hicks,* 509 U.S. at ——, 113 S.Ct. at 2747. If the defendant meets its burden, the presumption raised by the plaintiff's prima facie case disappears. *Burdine,* 450 U.S. at 255 & n. 10, 101 S.Ct. at 1094 & n. 10. However, the plaintiff is accorded the opportunity to demonstrate that the defendant's articulated rationale was merely a pretext for discrimination. *See Hicks,* 509 U.S. at ——–——, 113 S.Ct. at 2747–48; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *McDonnell Douglas,* 411 U.S. at 804–05, 93 S.Ct. at 1825.

According to *Hicks,* such evidence of pretext will permit a trier of fact to infer that the discrimination was intentional:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that, upon such rejection, "[n]o additional proof of discrimination is *required....*"

509 U.S. at ——, 113 S.Ct. at 2749 (footnote and citation omitted) (quoting lower court). It is unclear, however, whether the Court intended that in all such cases in which an inference of discrimination is permitted · a verdict of discrimination is necessarily supported by sufficient evidence.

■ We believe that the question does not yield a categorical answer. Rather, we are convinced that ordinarily such verdicts would be supported by sufficient evidence, but not always. The answer lies in our traditional sufficiency-of-the-evidence analysis. *See* Deborah C. Malamud, *The Last Minuet: Disparate Treatment After Hicks,* 93 Mich. L.Rev. 2229, 2305 (1995) (noting that "the Court stressed in *Hicks* that once a *McDonnell Douglas–Burdine* case reaches the pretext stage, it is to be treated like any other civil case."). We test jury verdicts and· motions for summary judgment for sufficiency of the evidence under the *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969) (en banc), standard.[4] Under *Boeing,* "[t]here must be a conflict in substantial evidence to create a jury question." *Id.* at 375. Substantial evidence is defined as "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* at 374. Consequently, "[a] mere scintilla of evidence is insufficient to present a question for the jury." *Id.* Even if the evidence is more than a scintilla, "*Boeing* assumes that some evidence may exist to support a position which is yet so overwhelmed by contrary proof as to yield to a directed verdict." *Neely v. Delta Brick and Tile Co., Inc.,* 817 F.2d 1224, 1226 (5th Cir.1987).

Our *Boeing* analysis applies to circumstantial as well as direct evidence. Because direct evidence is rare in discrimination cases, a plaintiff must ordinarily use circumstantial evidence to satisfy her burden of persuasion. *See Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1085 (5th Cir.1994). Thus, this circuit has held repeatedly that a plaintiff need not provide direct evidence to sustain a jury finding of discrimination. *See, e.g., Burns v. Texas City Refining, Inc.,* 890 F.2d 747, 751 (5th Cir.1989). Similarly, *Hicks* does not cast aside circumstantial evidence as a means of allowing a factfinder to infer discrimination.

■ In an ADEA case, as in any lawsuit, a court must examine both circumstantial and direct evidence in deciding the sufficiency of the evidence to support a jury determination that the employer used age as

---

4. The standard for granting a Rule 56 motion for summary judgment or a Rule 50 motion for judgment as a matter of law is the same. Consequently, the presence of a jury verdict on the renewal of a Rule 50 motion should make no difference to the inquiry. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

a determinative factor in making the employment decision. *See United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 714 n. 3, 103 S.Ct. 1478, 1481 n. 3, 75 L.Ed.2d 403 (1983). Age need not be the sole reason for the adverse employment decision; however, "a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in ... [the employer's decisionmaking process] and had a determinative influence on the outcome." *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993). If age does not motivate the employer's decision, then a "discharge may well be unfair or even unlawful yet not be evidence of age bias under the ADEA." *Moore v. Eli Lilly & Co.,* 990 F.2d 812, 819 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993).

■■■■ To sustain a finding of discrimination, circumstantial evidence must be such as to allow a rational factfinder to make a reasonable inference that age was a determinative reason for the employment decision. The factfinder may rely on all the evidence in the record to draw this inference of discrimination. In tandem with a prima facie case, the evidence allowing rejection of the employer's proffered reasons will often, perhaps usually, permit a finding of discrimination without additional evidence. Thus, a jury issue will be presented and a plaintiff can avoid summary judgment and judgment as a matter of law if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that age was a determinative factor in the actions of which plaintiff complains. The employer, of course, will be entitled to summary judgment if the evidence taken as a whole would not allow a jury to infer that the actual reason for the discharge was discriminatory.

The evidence necessary to support an inference of discrimination will vary from case to case. A jury may be able to infer discriminatory intent in an appropriate case from substantial evidence that the employer's proffered reasons are false. The evidence may, for example, strongly indicate that the employer has introduced fabricated justifications for an employee's discharge, and not otherwise suggest a credible nondiscriminatory explanation.

■■■■ By contrast, if the evidence put forth by the plaintiff to establish the prima facie case and to rebut the employer's reasons is not substantial, a jury cannot reasonably infer discriminatory intent. *See* Malamud, 93 Mich.L.Rev. at 2308 ("There may be cases in which the [prima facie case and proof of pretext] goes the plaintiff's way, but a judgment for the plaintiff would still be legally questionable.") In some cases, for instance, the fact that one of the nondiscriminatory reasons in the record has proved highly questionable may not be sufficient to cast doubt on the remaining reasons. Likewise, an employer's explanation for its proffer of a pretextual reason may preclude a finding of discrimination. *See Woods v. Friction Materials,* 30 F.3d 255, 261 n. 3 (1st Cir.1994) (concluding that a jury could not infer age discrimination if the employer's articulated nondiscriminatory reason was that the employee lacked necessary work skills, but that the employer's real reason was to conceal its own acts of embezzlement); *Binder v. Long Island Lighting Co.,* 57 F.3d 193, 200 (2nd Cir.1995) ("Such an explanation might include, for example, protection of a business secret or even protection of the reputation of an employee who had engaged in undesirable conduct.").

When a plaintiff has offered pretextual evidence that allows a factfinder to reject the defendant's proffered reasons *and* infer discrimination, other circuits have been unwilling to upset a jury verdict for the plaintiff.[5]

---

**5.** *See, e.g., Barbour v. Merrill,* 48 F.3d 1270, 1276 (D.C.Cir.1995), cert. granted in part, —— U.S. ——, 116 S.Ct. 805, 133 L.Ed.2d 752 (1996); *Seman v. Coplay Cement Co.,* 26 F.3d 428, 433 (3d Cir.1994); *Gaworski v. ITT Commercial Fin. Corp.,* 17 F.3d 1104, 1110 (8th Cir.), cert. denied, —— U.S. ——, 115 S.Ct. 355, 130 L.Ed.2d

310 (1994); *McNabola v. Chicago Transit Auth.,* 10 F.3d 501, 514–15 (7th Cir.1993); *see also EEOC v. Ethan Allen, Inc.,* 44 F.3d 116, 120 (2d Cir.1994) (reversing summary judgment); *Batey v. Stone,* 24 F.3d 1330, 1336 (11th Cir.1994) (same); *Washington v. Garrett,* 10 F.3d 1421, 1434 (9th Cir.1993) (same).

In each of these cases, the factfinder could infer discrimination from evidence that the employer's proffered nondiscriminatory explanations were pretextual. In addition, several cases directly support the view that the evidence must permit an inference of discrimination to sustain a jury verdict for the plaintiff.[6] Therefore, our requirement that the evidence create an inference of discrimination comports with other circuit's caselaw.

■ We now turn to an application of the above principles to the record evidence in this case to determine whether enough evidence was produced to allow a rational jury to find that the true reason for Rhodes' discharge was age discrimination. In answering this question, we view all the evidence in the light most favorable to the verdict. *See Boeing,* 411 F.2d at 374.

### III.

### A.

■ Lee Snyder terminated Rhodes on October 31, 1986. Mr. Snyder told Rhodes he was part of a reduction in force (RIF) because of adverse economic conditions that persisted in the oilfield. Snyder told Rhodes, however that Guiberson would consider him for reemployment. Rhodes' personnel file reflected this same reason for the discharge. It was uncontradicted that Rhodes' position remained unfilled for only 6 weeks and that Guiberson knew at the time of termination or soon after that Rhodes would be replaced. Charles Baxter, the Guiberson representative, testified that he became the sales manager for the New Orleans area effective November 1, 1986 and within a few weeks knew that he would need another sales representative. By December 15, 1986, Rhodes' replacement, forty-two year old Rick Attaway, had already been hired at a salary of $36,000.

Lee Snyder, Rhodes' supervisor, testified via deposition that more than one salesman was clearly needed for the territory. Jack Givens, who had been Snyder's supervisor, testified that he told Snyder to replace Rhodes. Givens also testified that the business required more than one salesman, and that Rick Attaway, had been hired to replace Rhodes. James Sewell, Snyder's other supervisor, testified that Rhodes was told that his position was being eliminated and that this statement was not true. The evidence supports a finding that Guiberson did not tell Rhodes the truth about why it was discharging him.

### B.

Guiberson Oil's defense at trial was not that Rhodes was RIF'd, but that he was discharged because of his poor work performance. Here too, Rhodes presented evidence to counter Guiberson's assertion.

Rhodes customers' testified that Rhodes was an excellent salesman who only lost bids when Guiberson's price was too high. Johnny Ford of CNG Producing Company described Rhodes' performance as follows: "I've only known one other salesman in my career that I think equals Calvin's expertise as a salesman." Leroy Lehmann of Odeco Oil and Gas testified that Rhodes called on his company many times, that Odeco had accepted some of his bids, that Rhodes "possessed the technical skills and ability to explain what he was selling," and that he had no complaints about Rhodes' performance. Terrence Oliver of Texaco testified that Rhodes had made several calls on his company, that Rhodes knew what he was doing, performed his job, and had the technical skills necessary to sell his product. Joshua

---

**6.** *See, e.g., Udo v. Tomes,* 54 F.3d 9, 13 (1st Cir.1995) ("While the plaintiff may rely on the same evidence to prove both pretext and discrimination, the evidence must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by discriminatory animus."); *Woodman v. Haemonetics Corp.,* 51 F.3d 1087, 1092 (1st Cir.1995) ("The plaintiff-employee may rely upon the same evidence to establish both pretext and discrimination, provided it is adequate to enable a rational factfinder to infer that the intentional age-based discrimination was a determinative factor in the adverse employment action."); *Woods,* 30 F.3d at 262 ("Because Woods has failed to present sufficient evidence to permit a reasonable factfinder to infer that FMI's articulated reason was a pretext for unlawful age discrimination, his claim under the ADEA must fail.").

Patterson of LGS Exploration testified that Rhodes explained his product to Patterson's satisfaction, that Patterson had no problems with Rhodes' technical skills or abilities, that Rhodes was doing his job, and that the other Guiberson salesmen had not called on his company. George Armistead of Union Oil testified that Rhodes called on him every three to six weeks, that Rhodes "not only did what I say he should have done, but he'd go beyond the call of duty," that Rhodes would follow up on projects and "dealt with you in a very professional manner." Kerry Allen of Placid Oil testified that Rhodes answered his questions to his satisfaction, explained the product, and "handled himself very professionally."

Guiberson officials' testimony also provided support for Rhodes' contention that Guiberson's "productivity" justification of his termination was a pretext for age discrimination. Lee Snyder testified that the memo placed in Rhodes' file explaining that Rhodes lacked technical expertise in downhole operations was substantially true but noted that it was also a "CYA ... (cover your _ss)" letter. Snyder testified that Rhodes was a good salesman with strong customer contacts and noted that Jack Givens—Snyder's boss who instructed Snyder to fire Rhodes—once said that he could hire two young salesmen for what some of the older salesmen were costing. Snyder quickly backed away from this statement and said that Givens had said he could hire two *new* salesman for what some of the *others* were costing him. Givens said he was not aware of telling Snyder this. He also admitted that he had never talked to any of Rhodes' customers about Rhodes' performance as a salesman.

James Sewell, Snyder's other supervisor, testified that he had been very impressed with Rhodes' sales plans and that technical ability was not necessary to sell the product. He also testified that Rhodes had a poor customer base, but admitted that he did not know who Rhodes' customers were, had not talked to any of Rhodes' customers, and had no documentation to support his testimony about Rhodes' poor performance.

Lloyd Allen, the other salesman in the New Orleans office with whom Rhodes was compared, at first testified that his sales were much higher than Rhodes' but clarified on cross-examination that Rhodes' sales during the period in question nearly matched his own. Allen also admitted that the records supporting his testimony may have been incomplete, that Rhodes may have made another sale for which Allen had not credited him, and that another salesman may have been responsible for one of the sales Allen credited to himself. Rhodes conceded that his sales were lower than Lloyd Allen's but noted that Allen was selling to companies that did not always take the lowest bid and that Allen had been in New Orleans longer than Rhodes and thus had discovered which companies did this.

Guiberson produced no definitive records reflecting the sales of Rhodes, Allen, Attaway, or any of its other salesmen. Nor did Guiberson reveal the sales volume it expected Rhodes and the other salesmen to meet.

Based on this evidence, the jury was entitled to find that the reasons given for Rhodes' discharge were pretexts for age discrimination. The jury was entitled to find that Guiberson's states reason for discharging Rhodes—RIF—was false. Additionally, the reason for discharge that Guiberson Oil proffered in court to meet Rhodes' prima facie case was countered with evidence from which the jury could have found that Rhodes was an excellent salesman who met Guiberson Oil's legitimate productivity expectations. Viewing this evidence in the light most favorable to Rhodes, a reasonable jury could have found that Guiberson Oil discriminated against Rhodes on the basis of his age.

Conclusion

After considering all of the evidence in the record under the standard set forth in *Boeing Co. v. Shipman,* we are convinced that the district court properly accepted the jury's verdict on liability and willfulness. Guiberson Oil's motion for JNOV was properly denied. The panel did not reach Guiberson's contention that the damages the district

court awarded are excessive and we remand this issue to the panel for disposition.

AFFIRMED.

EMILIO M. GARZA, Circuit Judge, specially concurring:

I agree with the Court's holding that the district court properly denied Guiberson Oil's motion for JNOV. I write separately, however, to emphasize the symbiotic relationship between *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969), and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

The Court quotes the passage in *Hicks* establishing that a plaintiff's prima facie case, together with the factfinder's disbelief of the defendant's proffered reasons, will permit the factfinder to infer intentional discrimination. *See* maj. op. at 992–93 (quoting *Hicks*, 509 U.S. at ——, 113 S.Ct. at 2749). The Court then states that in some cases, evidence sufficient to support an *inference* of discrimination under *Hicks* will not be sufficient to support a *verdict* of discrimination under *Boeing*. See maj. op. at 993 ("[O]rdinarily such verdicts would be supported by sufficient evidence, but not always."). In my opinion, this distinction merits further critical analysis, for, although *Boeing* states the proper test for determining whether there is sufficient evidence to submit a case to a jury in a federal court trial,[1] *Hicks* tells us specifically what evidence constitutes "sufficient evidence" in the Title VII context.

The ultimate issue in Title VII cases is whether the defendant intentionally discriminated against the plaintiff. *Hicks*, 509 U.S. at ——, 113 S.Ct. at 2749. I therefore agree with the Court that:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the plaintiff's prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination.

*Hicks*, 509 U.S. at ——, 113 S.Ct. at 2749. Unlike the opinion of the Court, I find this language very clear. In all cases in which an inference of discrimination is permitted, a verdict of discrimination is necessarily supported by sufficient evidence.

A careful reading of *Hicks* reveals that in the Title VII context, the Supreme Court has answered the sufficiency-of-the-evidence questions posed by *Boeing*. *Boeing* states that courts should not grant a motion for judgment as a matter of law "if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." 411 F.2d at 374. *Hicks* instructs that the trier of fact is permitted to infer intentional discrimination upon its "disbelief of the reasons put forward by the defendant ..., together with the elements of the prima facie case." 509 U.S. at ——, 113 S.Ct. at 2749. Thus, such evidence will always be "substantial," as that term is defined in *Boeing*.

---

1. The standard reads:

   On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

   *Boeing*, 411 F.2d at 374.

*Boeing* also states that courts should grant a motion for judgment as a matter of law "[i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict." 411 F.2d at 374. *Hicks* answers this inquiry also. *Hicks* tells us that the trier of fact is permitted to infer intentional discrimination upon its "disbelief of the reasons put forward by the defendant . . ., together with the elements of the prima facie case." 509 U.S. at ——, 113 S.Ct. at 2749. Thus, such evidence will always allow a jury to arrive at a verdict of intentional discrimination, regardless of facts and inferences to the contrary.[2]

In addition, a careful reading of *Boeing* reveals that in order to review Title VII cases for sufficiency of the evidence, courts must violate a fundamental aspect of the *Boeing* standard. The *Boeing* standard directs that courts should neither "weigh conflicting evidence and inferences, [nor] determine the credibility of witnesses." 411 F.2d at 374. In the Title VII context, the ultimate finding is whether the defendant intentionally discriminated against the plaintiff. *Hicks*, 509 U.S. at ——, 113 S.Ct. at 2749. This finding is the third step in the *McDonnell*

*Douglas* framework,[3] and is not reached by a reviewing court until after it determines that the plaintiff established a prima facie case (first step) and the defendant produced a nondiscriminatory reason (second step). *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–54, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981). *Hicks* explains that a factfinder may infer intentional discrimination from (1) the plaintiff's prima facie case, and (2) its disbelief of the defendant's proffered reasons. 509 U.S. at ——, 113 S.Ct. at 2749. If the plaintiff fails to present sufficient evidence to establish a prima facie case, the case will be taken from the jury at the first step in the *McDonnell Douglas* framework. *Burdine*, 450 U.S. at 253–54, 101 S.Ct. at 1094. Therefore, at the third step in the *McDonnell Douglas* framework, the only remaining target for sufficiency-of-the-evidence review will be the factfinder's disbelief of the defendant's proffered reasons.[4] Whether a jury believes the reasons proffered by a defendant is essentially a credibility determination. *See Hicks*, 509 U.S. at ——, 113 S.Ct. at 2748 ("[T]he burden-of-production determination [second step] necessarily *precedes* the credibility-as-

2. The Court's position in effect maintains that inferences that the Supreme Court has declared "permissible" may be at the same time "not reasonable." In addition to the facial untenability of such a distinction, the Court's position is inconsistent with the policies underlying the *Boeing* and *Hicks* opinions. *Boeing* presupposes an evidentiary framework governed by federal law. For example, the standard of relevancy under Rule 401 is intentionally much *easier* to satisfy, or in other words much *less focused*, than the standard for sufficiency of the evidence:

> The standard of probability under the rule is "more . . . probable than it would be without the evidence." Any more stringent requirement is unworkable and unrealistic.... Dealing with probability in the language of the rule has the added virtue of avoiding confusion between questions of admissibility and questions of the sufficiency of the evidence.

FED.R.EVID. 401 advisory committee's note.

In contrast, *Hicks* presupposes an evidentiary framework governed by the burden-shifting structure outlined in *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The burden-shifting structure of *McDonnell Douglas* is intentionally *more focused* than the standard for sufficiency of the evidence:

> Usually, assessing the burden of production helps the judge determine whether the litigants have created an issue of fact to be decided by the jury. In a Title VII case, the allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 n. 8, 101 S.Ct. 1089, 1094 n. 8, 67 L.Ed.2d 207 (1981).

Faced with such conceptual dynamics, I fail to understand how the Court can logically conclude that a jury—that is "permitted" to reach a specific inference through the focused Title VII framework at work in *Hicks*—could at the same time be acting outside the broad umbrella of "reasonableness" established by *Boeing*.

3. *See* maj. op. at 992 (outlining steps in *McDonnell Douglas* framework).

4. While a plaintiff surely might present a more convincing case by additionally presenting direct evidence of the defendant's intent to discriminate, *Hicks* states explicitly that "no additional proof of discrimination is required." 509 U.S. at ——, 113 S.Ct. at 2749 (emphasis and quotation marks omitted).

sessment stage.").[5] As *Boeing* states, "It is the function of the jury ... not the Court, to ... determine the credibility of witnesses." 411 F.2d at 374. By asking, in effect, "Is there sufficient evidence to support the jury's disbelief of the defendant's proffered reasons?" *see* maj. op. at 994–95, the Court violates *Boeing*'s explicit directive.[6]

I understand the reluctancy of the Court to state that jury verdicts in Title VII cases are always supported by sufficient evidence. It is indeed tempting, as a matter of policy, to construct a standard for appellate review of Title VII cases which reserves for ourselves the power to overturn jury verdicts which we find especially egregious. However, we are not free to decide cases based on our view of a policy debate which the Supreme Court has already resolved. *Hicks* states that "rejection of the defendant's proferred reasons is enough at law to *sustain* a finding of discrimination." 509 U.S. at ——

n. 4, 113 S.Ct. at 2749 n. 4. Our *Boeing* opinion states that we should not usurp the function of the jury "to weigh conflicting evidence and inferences, and determine the credibility of witnesses." 411 F.2d at 374. To the degree that we use *Boeing* as a vehicle to decide whether a jury's disbelief of the defendant is supported by sufficient evidence, we violate the spirit of Supreme Court precedent and the letter of our own.

DeMOSS, Circuit Judge, joined by JERRY E. SMITH and RHESA HAWKINS BARKSDALE, Circuit Judges, concurring in part and dissenting in part.

I wholeheartedly concur with most of the legal analysis presented, both explicitly and implicitly, in the majority opinion.[1] I concur, for example, with the reaffirmation of *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969 (en banc) as the controlling test for measuring the sufficiency of the evidence, and with

---

**5.** The Court cites opinions from the First and Second Circuits to support its analysis. *See* maj. op. at 994–95 n.6. These opinions recite hypothetical cases in which, they claim, no reasonable factfinder could find discrimination despite the presentation of a prima facie case and evidence of pretext. A close look at these hypotheticals reveals that their conclusions rely on courts making credibility determinations:

> For example, suppose an employee made out a truly bare-bones prima facie case of age discrimination, and the employer responded that the employee lacked the necessary skills for the job. Suppose also that unrefuted evidence showed that the response was a pretext, because the employer had fired the employee to conceal the employer's own acts of embezzlement. In such an instance, there would be a prima facie case at the outset and a disbelieved pretext, but we think it plain that no reasonable jury could find age discrimination on such a record.

*Woods v. Friction Materials, Inc.*, 30 F.3d 255, 260 n. 3 (1st Cir.1994).

> [W]e do not exclude the possibility that an employer may explain away the proffer of a pretextual reason for an unfavorable employment decision. Such an explanation might include, for example, protection of a business secret or even protection of the reputation of an employee who had engaged in undesirable conduct.

*Binder v. Long Island Lighting Co.*, 57 F.3d 193, 200 (2nd Cir.1995) (internal citations omitted).

**6.** Even the fact situation in *Boeing* cries out with irony when compared to the rationale of the Court. Our en banc opinion in *Boeing* held that

the original panel in the case erred by applying the same standard for sufficiency of the evidence in federal diversity cases that the Supreme Court had applied in cases brought under the Federal Employers' Liability Act. *Boeing*, 411 F.2d at 370–73 (distinguishing *Lavender v. Kurn*, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946)). Thus, the original panel in the *Boeing* case erred by conflating the standard applicable to ordinary federal court trials with the standard announced by the Supreme Court in the context of a specific statutory action. The opinion of the Court, by applying *Boeing*'s standard for ordinary federal court trials to Title VII cases, commits the same error today. Our analysis in *Boeing* bears repeating:

> The standard provided by the Supreme Court and Circuit Courts in FELA cases for sufficiency of evidence to create a jury question is proper under the Federal Employers' Liability Act, and with this we do not disagree. But in non-FELA federal cases which are not based on statute, the formulation of the test of sufficiency of evidence is substantially different.

*Boeing*, 411 F.2d at 373.

**1.** In his special concurrence, my colleague, Judge Emilio Garza, concurs in the result reached by the majority, but in effect dissents from (1) the majority's reaffirmation of our historical *Boeing* test for measuring the sufficiency of the evidence in employment discrimination cases; and (2) the majority's holding that evidence that an employer's articulated reason is false does not independently support a jury finding of discrimination. My own view is in many senses the mirror opposite.

the further conclusion that nothing in *St. Mary's Honor Center v. Hicks*, 509 U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) changes *Boeing*'s applicability on appeal to employment discrimination cases. *Majority opinion* at 993–94. I concur also with the majority opinion holding that any presumption raised by the *McDonnell Douglas* framework vanishes once the employer meets its burden of articulating a legitimate nondiscriminatory reason for the employment action and that the permissive inference allowed by certain language in *Hicks* does not alter the scope of our appellate review. *See Majority opinion* at 992–93. Nonetheless, I continue to believe that the jury verdict against Guiberson Oil was not supported by legally sufficient evidence and write separately in Part I of this opinion to explain why I believe the majority has incorrectly applied the correct legal principles to reach the wrong result.

I am also able to concur in large part, although with certain reservations, in the majority's analysis of that by now "infamous" passage in *Hicks* that "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *Hicks*, 509 U.S. ——, 113 S.Ct. at 2749. I completely agree that the evidence will be sufficient to support a jury finding of age discrimination *only* when a rational factfinder could reasonably infer that age was a determinative reason for the employment decision. *Majority opinion* at 994. When the plaintiff-employee is relying solely upon evidence tendered to establish a prima facie case and evidence that the employer's articulated reason for the employment decision is false, that evidence must also be sufficient to independently support the additional inference that the false reason was offered as a pretext for the employer's unlawful and intentional discrimination on the basis of age. *Majority opinion* at 994–95.

While *Hicks* permits an inference of discrimination in the appropriate case, it does not require that inference in every case. Despite Judge Garza's suggestion to the contrary in his special concurrence, evidence that an employer was less than candid about its reasons for discharge will not in every instance be sufficient to support a jury finding of discrimination because of age under the ADEA. *Majority opinion* at 992–93.

I cannot agree with the majority's conclusion that verdicts supported by the prima facie case and evidence of falsity would "ordinarily" be supported by sufficient evidence. *Majority opinion* at 993. Nor would I hold that such verdicts would "ordinarily not" be supported by sufficient evidence. Rather, I agree with the majority's statement that the question "does not yield a categorical answer." *Majority opinion* at 993. I see no point in attempting to quantify or predict when or how often a particular factual showing will be sufficient in a civil case. The evidence will be sufficient when, as measured by the ultimate burden of proof, and under the *Boeing* standard, a rationale factfinder could reasonably find that the employer discriminated on the basis of age.

While I agree with the basic analysis, I do not believe the majority has adequately answered significant questions concerning the application of the *Hicks* permissive inference standard and the "suspicion of mendacity" language in ADEA cases. I write separately in Part II of this opinion to express my concern on those issues.

Finally, while I do not dispute the applicability of the *McDonnell Douglas* procedural framework to ADEA cases as a general proposition, I do question whether the logic underlying the *Hicks* permissive inference applies equally in the ADEA context. On this point, I write separately in Part III of this opinion to underscore important differences between Title VII and the ADEA, and to identify what I believe to be the appropriate guiding principles in the Supreme Court's unanimous opinion in *Hazen Paper*. To illustrate that point, I raise an issue of statutory construction that I believe is crucial, not only in this case, but in all ADEA cases where evidence that an employer's reason is false will be used for the inference that the employer is lying for the purpose of concealing intentional discrimination on the basis of age.

## I. The Majority's Analysis of *Boeing* and the Evidence

The Court today affirms both the continued vitality of our *Boeing* standard, and its applicability after *Hicks* to employment discrimination cases. *Majority opinion* at 992–94. Contrary to the approach taken by some other circuits, *Boeing* contemplates consideration of all of the evidence in a case, both direct and circumstantial, and whether tendered by the movant or non-movant.[2] *Majority opinion* at 992–94. Under *Boeing*, even "substantial evidence" that might be sufficient to support the verdict when considered to the exclusion of other evidence, may be "so overwhelmed by contrary proof as to yield to a directed verdict." *Majority opinion* at 993–94 (quoting *Neely v. Delta Brick and Tile Co., Inc.*, 817 F.2d 1224, 1226 (5th Cir.1987)). Moreover, the sufficiency determination in employment discrimination cases, as in other civil cases, is peculiarly dependent upon the facts in each case. *See Majority opinion* at 993–94.

While I agree with the majority opinion's articulation of the *Boeing* standard, which governs our review, I cannot agree with the majority opinion's application of that standard to the record evidence in this case. In my view, the majority fails to give adequate consideration to substantial, indeed overwhelming, evidence offered by Guiberson Oil that Rhodes was terminated because he was unable to produce sufficient sales to justify his continued employment in a difficult market which required a substantial reduction in force. For that reason, I cannot concur with the result reached by the majority opinion.

The majority's misapplication of *Boeing* is complicated in this case by its heavy, and I believe inappropriate, reliance on the relatively weak evidence offered by Rhodes to establish a prima facie case. Rather than reargue the facts, which I believe are adequately discussed in the original panel opinion, I will develop just one aspect of this case here to illustrate the point.

It is uncontradicted that the Atlas/Compac decision makers who terminated Rhodes and the Guiberson/Compac decision makers who hired Attaway were all within the ADEA protected class, being over 40 years of age. It is likewise uncontradicted that Allen, who at age 61 was five years older than Rhodes, was retained; while Rhodes, age 56, was selected for termination. Moreover, Attaway, who is identified by Rhodes as his replacement, was 42 years of age when he began contracting as a consultant with Guiberson Oil in December 1986. Thus, the decision makers, the retained employee and Rhodes' "replacement" were all within the ADEA protected age group.

Our Court has previously held that a discharged employee can satisfy his prima facie case under the ADEA by showing that his replacement was "younger than" the discharged employee. *E.g., Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993); *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1504 (5th Cir.1988).[3] I agree with that statement of the law for purposes of establishing the prima facie case. However, once the employer articulates a legitimate nondiscriminatory reason for the employment decision, any presumption raised by the *McDonnell Douglas* framework disappears and is gone from the case. *Majority opinion* at 992–93 (citing *Hicks*, 509 U.S. at ———– ———–, 113 S.Ct. at 2747–48). *Hicks* instructs that, at this point, it is the "*elements* of the prima facie case" (in other words the evidentiary facts offered in support of the prima facie case not the "presumption of the prima facie case") that *may* combine to support an inference of intentional discrimination. *Hicks*, 509 U.S. at ———–, 113 S.Ct. at 2749. In this case, where the decision makers, the retained employee and the replacement employee were all within the protected age group, with many of them

---

**2.** It was this conflict that precipitated this Court's reconsideration of the applicable standard en banc in *Boeing*.

**3.** Note, however, that the Supreme Court recently granted writ of certiorari to resolve a circuit conflict on the issue of whether an ADEA plaintiff can establish a prima facie case by showing

that he was replaced by a younger person, or whether instead the employee must he show that he was replaced by someone outside the protected class. *O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542 (4th Cir.1995), *petition for cert. granted*, —— U.S. ——, 116 S.Ct. 472, 133 L.Ed.2d 401 (1995) (No. 95–35464).

being older than or very near Rhodes' age, I do not believe that *Hicks'* "suspicion of mendacity" language can reasonably work to support an inference that "age was a determinative factor" in the decision to terminate Rhodes.

Our Court has held on several occasions that under Title VII there is no prima facie case and therefore no presumption of discrimination when the *replacement employee* is a member of the same protected class as the discharged employee. *E.g., Meinecke v. H & R Block of Houston,* 66 F.3d 77, 83 (5th Cir.1995) (prima facie case under Title VII requires proof that the employer retained employees outside the protected class or replaced the discharged employee with a person outside the protected class). In like manner, it logically follows that when the *decision makers* are all of the same protected class as the discharged employee, it is similarly less likely that unlawful discrimination was the reason for the discharge. For example, if this were a Title VII case alleging discrimination because of race, proof that all of the decision makers were members of the same race as the complaining employee would considerably undermine the probability that race was a factor in the employment decision. The Supreme Court had no difficulty grasping this concept in its discussion of a hypothetical work place where, similar to the work place at issue here, there were a disproportionate number of individuals within the protected class and the decision maker was within the protected class. *See Hicks,* 509 U.S. at ——————, 113 S.Ct. at 2750–51 (rejecting dissent's suggestion that such evidence would be irrelevant on the ultimate issue of discrimination when plaintiff proved indirectly that the employer's articulated reason was unworthy of credence); *see also Hicks v. St. Mary's Honor Center,* 756 F.Supp. 1244, 1252 (E.D.Mo.1991) (citing fact that decision makers were members of the same protected class in support of the court's conclusion that plaintiff failed to satisfy the ultimate burden of proving intentional discrimination under Title VII), *rev'd,* 970 F.2d

487 (8th Cir.1992), *rev'd,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

In this case, undisputed evidence that the decision makers, the retained employee and the "replacement" employee were all members of the protected age group substantially weakens the probative value of Rhodes' evidence that the replacement employee, although within the age protected group, was younger than Rhodes. Thus, no reasonable juror could infer, in this case, that age was the *determinative* factor in the decision to terminate Rhodes simply on the basis of the "element of the prima facie case." *See Hazen Paper,* 507 U.S. at 609–11, 113 S.Ct. at 1706. For that reason, I conclude that the majority opinion, although applying the correct legal standards, reaches the wrong result.

## II. Problems with Applying the *Hicks* Permissive Inference

I concur in the majority's conclusion that the inference permitted by *Hicks* will only sometimes support a jury finding of discrimination and that *Boeing* controls as to whether the additional required inference of discrimination will be supported by sufficient evidence. The majority's brief treatment of the issue, however, ignores substantial practical difficulties with applying the "suspicion of mendacity" language to Rule 50 motions raising the sufficiency of the evidence, either before the trial judge or an appellate panel.

Prior to 1991, when Title VII discrimination cases were tried to the judge, we might have reasonably expected that a trial judge would prepare sufficiently detailed findings of fact and conclusions of law tracking relevant liability issues.[4] However, since 1991 for Title VII cases, and historically in ADEA cases, the factfinder is the jury. Title VII cases are typically submitted to the jury on the single issue of "intentional discrimination," while ADEA cases are typically submitted to the jury on the dual issues of liability for discrimination and the issue of willfulness. *See* 29 U.S.C. § 623 (prohibiting discrimination because of age); 29 U.S.C.

---

**4.** It was in fact the detailed findings of the trial judge in *Hicks* which presented the controversy

as to which were controlling.

§ 626(b) (providing for liquidated damages upon a showing that the employer's violation of the ADEA was willful).

Generally, there are no separate issues submitted which require the jury to determine which reason or reasons have been offered by the employer as an explanation for its actions. Likewise, there is usually no additional finding on the issues of whether the jury disbelieved or rejected such reasons nor whether the jury found any "suspicion of mendacity." I submit, therefore, that the following questions demand some better resolution than that given by the majority:

(a) How does a reviewing judge determine from the record that "the factfinder disbelieved" or "rejected" all of the employer's reasons?

(b) Is there any difference between a factfinder's "disbelief" of the employer's reasons, as used in *Hicks*, 509 U.S. at ——, 113 S.Ct. at 2749, and a factfinder's "rejection" of the employer's reasons, as used in the same paragraph? *Id.*

(c) How does a reviewing judge determine whether the factfinder's disbelief was accompanied by a "suspicion of mendacity?"

(d) What does the term "suspicion of mendacity" mean? The term does not appear in any reported federal case (district, Circuit or Supreme Court) prior to its use in *Hicks.* In addition, the term does not appear in the United States Code or in the legislative history of either Title VII or the ADEA.

(e) Finally, and perhaps most importantly, how can a reviewing judge determine whether the factfinder did, in fact, draw the additional required inference of intentional discrimination?

If we say (1) that the jury's "yes" answer to an ADEA liability issue permits the reviewing judge to infer that the jury "disbelieved" or "rejected" each of the employer's reasons, and (2) that the jury's hypothetical "disbelief" or "rejection" permitted the jury to draw the additional inference of "mendacity," and finally (3) because of the prior infer-

ences, we can infer that the jury drew the ultimate inference of discriminatory bias in making its determination, are we not reasoning backward from the result rather than analyzing the evidence involved?

### III.   Comparing Title VII and the ADEA

#### A.   *Hazen Paper, Hicks* and Statutory Language

Even a cursory examination reveals that there are substantial differences between the standards applicable under the ADEA and those applicable under Title VII. I begin with a comparison of the Supreme Court opinions in *Hicks* and *Hazen Paper.*

*Hazen Paper,* a unanimous decision of the Supreme Court, squarely addressed the issue of the sufficiency of the evidence to support an ADEA claim.[5] *Hazen Paper* provides that there can be no base liability in an ADEA case unless age "actually played a role in ... and had a determinative influence" on the challenged employment decision. *Hazen Paper,* 507 U.S. at 609–11, 113 S.Ct. at 1706 (1993). Other statements in *Hazen Paper* elaborate on the requirement that age "actually play a role" and exercise "a determinative influence" on the employer's decision. *Id.* at 607–09, 113 S.Ct. at 1705 ("We now clarify that there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age."); and *id.* at 609–11, 113 S.Ct. at 1706 ("In a disparate treatment case, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.").

*Hicks,* decided two months after *Hazen Paper,* is a five-to-four decision addressing, not sufficiency, and not the ADEA, but the propriety of judgment as a matter of law under Title VII after a bench trial which resulted in findings by the district court that (1) the reasons offered by the employer for the discharge were "not the real reasons," but that (2) the plaintiff/employee had nonetheless failed to prove that racial discrimina-

---

**5.** *Hazen Paper* reversed and remanded for a redetermination of the sufficiency of the evidence to support the jury's finding of base liability.

tion was a "motivating factor" in the discharge.[6]

Lest there be any doubt, there is a real and statutory basis for distinguishing between a "determinative influence" under the ADEA (*Hazen Paper*) and a "motivating factor" under Title VII (*Hicks*). The ADEA prohibits discrimination against any individual "because of age," but provides that is it not unlawful for an employer to take action otherwise prohibited by the ADEA when "the differentiation is based on reasonable factors other than age." 29 U.S.C. § 623(f)(1). Title VII, on the other hand, prohibits discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2. Since 1991, however, an employer is liable under Title VII anytime one of the protected characteristics "was a motivating factor for any employment practice, *even though other factors also motivated the practice.*" 42 U.S.C. § 2000e–2(m) (emphasis added). By adding § 2000e–2(m) in 1991, Congress intended to overrule the Supreme Court's opinion in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), which held that "an employment decision motivated in part by prejudice does not violate Title VII if the employer can show after the fact that the same decision would have been made for nondiscriminatory reasons." H.R.Rep. No. 102–40(II) U.S.Code Cong. & Admin.News 1991, pp. 549, 694, 695. However, even though the ADEA was amended in other respects in 1991, and even though *Price Waterhouse* had been applied to the ADEA, no companion changes were made to the ADEA to unify the standards applicable under Title VII and the ADEA. *See also Hazen Paper,* 507 U.S. at 609–11, 113 S.Ct. at 1706 ("We now clarify that there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age.").

There are other differences in the standards applicable under Title VII and the ADEA. For example, in 1991 Congress also added to Title VII new subsections (k) defining the burden of proof in disparate impact cases and (1) prohibiting discriminatory use of test scores. By contrast, *Hazen Paper* indicates that disparate impact theory is not available under ADEA. *See Hazen Paper,* 507 U.S. at 609–11, 113 S.Ct. at 1706 ("we have never decided whether a disparate impact theory of liability is available under the ADEA"); *id.* ("Disparate treatment captures the essence of what Congress sought to prohibit in the ADEA."); *id.* at 607–09, 113 S.Ct. at 1705 (employment action based on factor empirically correlated with but distinct from the employee's age does not violate the ADEA). While our Court has not addressed the issue, other circuits have followed that lead. *E.g., Ellis v. United Airlines, Inc.,* 73 F.3d 999, 1003 (10th Cir. Jan. 4, 1996); *EEOC v. Francis W. Parker School,* 41 F.3d 1073 (7th Cir.1994).[7]

Both Congress and the Supreme Court treat the ADEA and Title VII as two separate and distinct statutory provisions. Until Congress repeals the ADEA and amends Title VII by defining "age" as a protected characteristic under Title VII, or until the Supreme Court clearly and expressly requires that everything it writes in a Title VII case should be automatically and equally applied in an ADEA case, we should follow the Supreme Court's lead in *Hazen Paper* and *Hicks* by recognizing that the standards governing Title VII liability and ADEA liability are not, and need not, be identical. Under *Hazen Paper,* an ADEA plaintiff must demonstrate that "age actually motivated the employer's decision" or "actually played a role in the employer's decision making process" or "had a determinative influence on the outcome." The world will not come to an end, nor will our system be in peril, because ADEA plaintiffs face a different and higher burden than Title VII plaintiffs.

---

6. Neither the majority nor the dissent in *Hicks* make any reference to the ADEA, nor to the Court's unanimous *Hazen Paper* decision rendered just two months previously, and neither expresses any opinion as to the applicability of *Hicks* to anything other than Title VII cases.

7. Congress also declined to incorporate Title VII procedure into the ADEA, and incorporated Fair Labor Standards Act procedures instead. *Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978).

B. The *Hicks* Permissive Inference and ADEA Willfulness

There is one other, crucial difference in the statutory schemes. The ADEA provides a two-tiered concept of liability which permits recovery of an additional amount of "liquidated damages" upon proof that the employer's violation of the ADEA was "willful." 29 U.S.C. § 623 (base liability); 29 U.S.C. § 626(b) (liability for willful violations); *see also Hazen Paper*, 507 U.S. at 613–15, 113 S.Ct. at 1708 (ADEA section providing liquidated damages for willful violations was derived from the Fair Labor Standards Act). Title VII, on the other hand, does not provide for liquidated damages. Under the ADEA, an employer's violation is willful when the employer knows or shows reckless disregard for whether its conduct is prohibited by the ADEA. *Hazen Paper*, 507 U.S. at 613–15, 113 S.Ct. at 1708.

Accordingly, the jury in this case received and answered the following issues:

(1) Do you find by a preponderance of the evidence that defendant Guiberson Oil Tools terminated the plaintiff Calvin Rhodes because of his age?

Answer: Yes.

(2) Do you find by a preponderance of the evidence that the defendant acted willfully when it terminated the plaintiff Calvin Rhodes?

Answer: *No.* (Emphasis added.)

The jury's answer of "no" on the willfulness issue was not appealed and is binding on this Court for purposes of appellate review. Therefore, the jury's uncontested finding is that Guiberson Oil neither knew nor showed reckless disregard for whether its conduct was prohibited by the ADEA; and that finding cannot be ignored or disregarded in assessing the sufficiency of the evidence in this case.

Although candor in employment relationships is a laudatory goal, it is clear that nothing in the ADEA statute says that an employer will be liable if he does not tell his employee the real reason for his discharge. The fundamental premise underlying the permissive inference allowed by *Hicks* is that if the employer lies about its reasons for discharging an employee, an inference may be drawn that he did so in order to cover up the real reason: unlawful and intentional discrimination in violation of the statute. However, a lie is a willful and intentional act, a conscious misstatement of fact, a false statement made with deliberate intent to deceive. One cannot be a liar in good faith or by accident or as a result of negligence. Now if a jury has answered the willfulness issue "No" and thereby found that the employer did not act with knowledge or reckless disregard as to whether its actions violated the ADEA (as the jury did in this case), is it reasonable to infer that that same jury would have found the employer lied? I think not. Conversely, if the jury in this case had actually found "that Guiberson did not tell Rhodes the truth about why it was discharging him" and "that Guiberson's stated reason for discharging Rhodes—RIF—was false" (inferential findings which the majority says would be supported by the evidence), then would not the jury almost certainly have answered the willfulness issue "Yes"? Since the jury in this case did not answer the willfulness issue "Yes", I think the majority's house of cards collapses around them. The probative value of the jury's actual answer of "No" to the willfulness issue completely overwhelms the thin evidence upon which majority relies to construct the hypothetical finding of "mendacity" as support for the *Hicks* permissive inference.

CONCLUSION

I seriously question the validity of a process which allows the reviewing court, without any express findings, to infer that the jury disbelieved each of the employer's reasons and also that the jury believed that the employer's false reason, if any, was offered as a pretext or cover for intentional discrimination. I also question whether the *Hicks* permissive inference has any basis in logic when the jury expressly finds, as it did in this case, that the employer did not act with knowledge or reckless disregard about whether its actions violated the ADEA. I conclude from the uneasy fit of the *Hicks* permissive inference in this context that this Court's carte blanche application of *Hicks*

Title VII principles to this ADEA case is unwarranted.

I dissent from the result reached on the facts of this case: (1) because the majority incorrectly applied this circuit's *Boeing* rule by failing to give effect to overwhelming evidence offered by Guiberson Oil that it did not terminate Rhodes "because of his age," and (2) because the majority accorded the marginal evidence offered by Rhodes to establish his prima facie case undue probative effect on the ultimate issue of intentional discrimination.

For the foregoing reasons, I concur in the legal analysis offered by the majority opinion, subject to the reservations expressed herein, and respectfully dissent as to the result reached by the majority of the en banc Court.

EDITH H. JONES, Circuit Judge, concurring and dissenting specially:

Like Judge DeMoss, I concur in the en banc majority's articulation of the law applicable to this case.

Like Judge DeMoss, I do not agree that the rules of law were correctly applied to the facts before us, and I therefore concur in Part I of his dissent.