DENNIS, Circuit Judge,
concurring in part and dissenting in part:
I respectfully concur in part and dissent in part. This case is on all issues very close to the line dividing minimally sustainable jury verdicts from those that are deficient in evi-dentiary basis. However, the evidence is of such quality and weight that reasonable and fair minded persons in the exercise of impartial judgment could find that, in a number of instances, the employer’s explanations for its adverse employment actions were not worthy of belief and that the employee was the victim of intentional discrimination.
If the employer satisfies its burden of producing evidence that the complained of adverse employment actions were taken for legitimate, nondiscriminatory reasons, the presumption of discrimination disappears. St. Mary’s Honor Center v. Hicks, 509 U.S. 502, 507, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). The disappearance of the presumption, however, does not mean that the jury cannot consider evidence introduced by the plaintiff to establish a prima facie ease. A satisfactory explanation by the employer, supported by evidence, destroys the legally mandatory inference of discrimination arising from the plaintiffs initial evidence. Nonetheless, this evidence and inferences properly drawn therefrom may be considered by the *1191 jury in deciding whether the employer’s explanation is worthy of belief and whether the employee has been the victim of intentional discrimination. Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 993-94 (5th Cir.1996)(en banc); See Hicks, 509 U.S. at 511, 113 S.Ct. at 2749; Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 255 n. 10, 101 S.Ct. 1089, 1095 n. 10, 67 L.Ed.2d 207 (1981).
Once the presumption of discrimination disappears, the ease is treated like any other civil case. Guiberson, 75 F.3d at 993. We test jury verdicts and motions for summary judgment for sufficiency of the evidence under the Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir.1969)(en banc), standard. The standard for granting a Rule 56 motion for summary judgment or a- Rule 50 motion for judgment as a matter of law is the same. Id. at 369 n. 4. In Boeing, after thorough study of the numerous prior decisions of this court which had dealt with the subject, as well as the different formulations of legal writers and commentators, the court announced the following standard:
On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence— not just that evidence which supports the non-mover’s case — but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n. o. v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh, conflicting evidence and inferences, and determine the credibility of witnesses.
Id. at 374-75.
Applying the Boeing standard to all of the evidence in the present case, in the light and with all reasonable inferences most favorable to the plaintiff, I conclude that there is evidence of such quality and weight that reasonable jurors in the exercise of impartial judgment could have reached different conclusions as to whether (A) the employer discriminated against Swanson because of his race in (1) placing him under surveillance and docking his accrued annual leave time for being late for work; (2) denying him parking privileges on an equal basis with other supervisory personnel; (3) denying him appropriate staff assistance; (4) giving him an improperly low annual evaluation, which deprived him of an opportunity for a promotion; and (B) the employer retaliated against Swanson by the above actions because Swanson filed complaints with the Equal Employment Opportunity Commission.
There was evidence that white employees were not monitored for late work arrivals and that the management watched black employees more closely for work rule infractions than other employees. There was also testimony that Swanson was the only manager who was required to sign in and out. Ms. Mazant testified that after Swanson filed his first complaint the work atmosphere changed and that close surveillance of Swanson began after his first grievance. Although Swanson was told he could not have parking privileges due to his lack of seniority and the lack of available space, there was evidence that less senior white employees were given parking spaces immediately upon their arrivals. There was evidence that Swanson was the only manager not allowed to park in the basement garage. In support of his complaint that he was denied adequate staff assistance, Swanson testified that he regularly stayed two hours late and came in on week *1192 ends to finish his work, and that he frequently had to type voluminous contracts.
On the other hand, I agree with the majority that the jury’s finding that the employer reassigned Swanson to Fort Worth for discriminatory or retaliatory reasons is not supported by a sufficient basis in the evidence. The decision to relocate Swanson was made at the Regional level by management in Fort Worth. The employer gave a legitimate, nondiscriminatory reason for the reassignment — there was no longer a need for a Building Management Specialist in New Orleans. There is no evidence from which a reasonable inference could be drawn that the employer’s Fort Worth regional office decision to reassign Swanson was connected with the evidence of discrimination by his New Orleans superiors.
Accordingly, I concur in the majority’s decision to reverse the jury verdict with respect to the employer’s reassignment of Swanson to Fort Worth and to the resulting loss of his supervisory authority; but I respectfully dissent from the majority’s decision to reverse the jury’s verdict in all other respects.