**UNITED STATES of America, Plaintiff,**

v.

**Bert D. REECE and Cleone J. Reece, Defendants.**

**No. CV–75–98–BLG.**

United States District Court, D. Montana, Billings Division.

April 10, 1978.

Daniel Patrick O'Hanlon, Atty. Housing Section, Civ. Rights Div., Dept. of Justice, Washington, D. C., Robert T. O'Leary, U. S. Atty., D. Mont., Butte, Mont., for plaintiff.

Charles E. Snyder, Billings, Mont., for defendant Bert D. Reece.

Paul G. Olsen, Jones, Olsen & Christensen, Billings, Mont., for defendant Cleone J. Reece.

## MEMORANDUM AND ORDER

BATTIN, District Judge.

This case arose out of a fair housing complaint filed with the Secretary of Housing and Urban Development ("HUD") by two airmen stationed at Logan Field near Billings, Montana, alleging that they were denied housing in an apartment owned by the defendants on the basis of race. After investigating the complaint, HUD determined to resolve the matter through its informal conciliation procedure. An agreement was worked out between the complainants, the defendants, and representatives of HUD, whereby defendants agreed to desist from any racially discriminatory policy, take certain affirmative steps, and pay each of the complainants $500 plus attorney's fees of $75. The defendants have admittedly failed to comply with the terms of this agreement, and the United States has filed a complaint under 42 U.S.C. § 3613, seeking mandatory relief to enjoin defendants from the discriminatory practices and compel them to perform the conciliation agreements.

Discovery undertaken pursuant to this complaint led the plaintiff to file an amended complaint alleging that, in addition to the racial discrimination outlined above, defendant Cleone Reece has maintained certain policies which allegedly discriminate on the basis of sex in violation of 42 U.S.C. § 3604. Presently pending is the motion of the United States for partial summary judgment on the issues of sex discrimination and enforcement of the conciliation agreement.[1]

Both defendants contend that the conciliation agreement is unenforceable on the ground that it was fraudulently induced. It is contended that representatives of HUD, particularly one Kerrigan, represented to the defendants that they were the subjects of a verified complaint, when in fact, defendants allege, no such complaint existed.

Regarding the sex discrimination action, to which only Cleone Reece is subject,[2] she argues that her policies are not discriminatory, in that the decision not to rent to certain single women is based on a salutary motive, and in that she in fact does not discriminate against divorced women receiving alimony and child support.

### I. Conciliation Agreement

The incident which gave rise to the conciliation agreement involved negotiations for the rental of an apartment between the two airmen complainants and Nola Ann Reece,[3] the daughter of the defendants. The airmen individually filed complaints on a HUD form, verified before a HUD offi-

---

1. It is conceded that summary judgment on the issue of whether defendants engaged in a racially discriminatory practice or policy would be improper due to the existence of questions of material fact.

2. The Fair Housing Act was amended in 1974 to add sex to the list of impermissible grounds for refusal to rent or sell a dwelling. Since Bert Reece was divested of any interest in the property before the sex discrimination law took effect, see, n. 4, infra, he is not a party to this portion of the suit.

3. One of the major fact questions in the race discrimination portion of this suit is whether Nola Reece was authorized to bind the defendants with her statements. She was apparently under instructions from Bert Reece not to involve herself in the rental of the apartments at the time the incident took place.

cer, naming Nola Ann Reece as the "defendant" and Bert Reece as a party who also may have violated the law. Cleone Reece was not mentioned in the complaints. At the time the incident took place, Bert and Cleone were living apart and apparently contemplating divorce.[4] Bert Reece had assumed full control and carried out all management duties at the time of the incident, assisted from time to time by Nola Reece. The alleged discriminatory refusal to rent occurred when Nola told one of the complainants that "We don't rent to blacks" upon learning that the airman had a black roommate.[5]

The defendants strenuously argue that the conciliation agreement may not be enforced against them since they are not named as defendants in the HUD administrative complaint. This argument is framed in terms of jurisdiction and in terms of fraud. Thus, defendants contend that HUD lacks jurisdiction to negotiate with parties not named as defendants and, in the alternative, that HUD fraudulently induced the defendants to enter the agreement by leading them to believe that they were named defendants in the administrative proceeding.

██ Plaintiff contends that the fact that Bert and Cleone Reece were not named as "defendants" in the HUD complaint does not constitute a defect in HUD's jurisdiction to negotiate a conciliation agreement. It is argued that the complaint is only required for purposes of notice. Since both Bert and Cleone Reece undeniably received notice of the complaint,[6] plaintiff argues that its jurisdiction to resolve the dispute was perfected.

4. Bert and Cleone Reece were divorced in 1974. As a part of the divorce settlement, Cleone received all the rental property.

5. There is sporadic dispute in the record as to the making of the statement; however, this factual question, if it is one, is material only to the race discrimination claim, and therefore does not bar partial summary judgment on the other issues.

6. Plaintiff has filed documents with the Court which incontestably demonstrate that copies of the administrative complaint were served on both defendants.

Plaintiff's argument appears to be well taken. As the Ninth Circuit has recognized, the conciliation provisions of § 3610 are not designed to be the equivalent of a full-blown adversary litigation. Rather, "[s]ection 3610 contemplates the resolution of disputes in the slower, less adversary context of administrative reconciliation and mediation." *TOPIC v. Circle Realty*, 532 F.2d 1273, 1276 (9th Cir. 1976). The construction urged by the plaintiff is fully consistent with this philosophy, and has been adopted by at least one court. *Taylor v. Fletcher Properties*, Civil Action No. 74–H–850 (S.D.Tex., Sept. 18, 1975) (unreported opinion, copy attached as Appendix I). In contrast, defendants cite absolutely no authority for the proposition that HUD may not mediate a conciliation agreement between a complainant and a party not named in the complaint. I therefore conclude that the agreement is not unenforceable on this ground.[7]

██ Since the Court concludes that a verified complaint naming these parties is not a prerequisite to the conciliation agreement, the defendants' claim of fraudulent inducement must also fail. Defendants contend that they were induced to sign the conciliation agreements by representations of HUD agents that the defendants were nominal parties in a verified complaint. Assuming *arguendo* that the misrepresentation occurred, I am unable to see how it would be material to their entering the conciliation agreements. Defendants had notice of the complaint alleging that discrimination had

7. Cleone Reece argues that she had no control over the operation of the rental property when the incident occurred, and therefore was not properly subject to investigation by HUD. The *Taylor* case suggests that this argument has no merit, since a necessary incident of ownership is the right to control. I find it completely consistent with the spirit of the Fair Housing Act to place on the owner of rental property the responsibility for ensuring that the property complies with the Act.

occurred regarding rental of property which they owned. As the *Taylor* case indicates, ownership is sufficient to subject defendants to the informal administrative procedure. Further, the deposition of Bert Reece[8] suggests that a major impetus to the conciliation agreement was the desire to avoid litigation. Since the defendants would be subject to suit whether they were named in the HUD complaint or not,[9] any misrepresentation as to the status of such a complaint loses its impact. This is particularly true where, as here, the defendants signed the agreements with the advice of counsel.

■ Cleone Reece also contends that the Attorney General may not bring suit under the Fair Housing Act absent a "pattern or practice" of discrimination. While this may be true of suits under 42 U.S.C. § 3613, defendants cite no authority for the proposition that a pattern or practice of discrimination must be shown before HUD can sue through the United States to enforce a conciliation agreement to which it is a party. On the contrary, it appears obvious that the conciliation agreement would be of little value as a tool for resolution of minor fair housing disputes if it were held to be unenforceable by suit in the nature of specific performance.

In short, the conciliation agreement appears to satisfy all the requisites of the contract. It is reduced to a writing which clearly expresses the terms agreed upon.

The mutual promises of the parties—that complainants would refrain from suing in exchange for certain affirmative action—appear to supply sufficient consideration. That the parties were aware of the contents and consequences of the agreement should be presumed from the fact that the agreement was entered on the advice of counsel. I find no reason in any of defendants' arguments to decline enforcement.

## II. *Sex Discrimination*

The sex discrimination claim against Cleone Reece was brought pursuant to 42 U.S.C. § 3613, which provides:

> Whenever the Attorney General has reasonable cause to believe that any person . . . is engaged in a pattern or practice of resistance to the full enjoyment of any rights granted by [the Fair Housing Act], or that any group of persons has been denied any of the rights granted by [the Fair Housing Act] and such denial raises an issue of general public importance, he may bring a civil action in any appropriate United States district court . . . requesting such preventive relief . . . as he deems necessary . . . .

Here, the amended complaint alleges that Cleone Reece has engaged in a pattern or practice of sex discrimination, and that an issue of public importance is raised.[10] The allegation is based on statements by Cleone

8. While the depositions in this case were taken on November 29 and 30, 1976, they remain unsigned by the deponents to this day. On February 3, 1978, the Court directed counsel for the defendants to obtain signatures on the depositions in compliance with Rule 30(e), F.R. Civ.P., within 10 days thereafter. Defense counsel have apparently been unable to comply with this Order. Therefore, under my Order of February 3, 1978, I will consider the depositions of Bert Reece, Cleone Reece, and Nola Ann Reece Bummer as though they had been certified as accurate by the deponents.

9. *See, TOPIC*, 532 F.2d at 1276, which indicates that a party directly injured by discriminatory housing practices may sue under 42 U.S.C. § 3612 without exhausting his or her administrative remedy.

10. The Attorney General's power to bring suit under 42 U.S.C. § 3613 may be triggered either by a pattern or practice or an issue of general public importance. While the existence of a pattern or practice is generally a question of fact, *see* Annot., 13 A.L.R.Fed. 285 (1972), courts have generally held that the determination of when an issue of general public importance is raised is left to the discretion of the executive branch. *See, United States v. Northside Realty Associates, Inc.*, 474 F.2d 1164, 1168 (5th Cir. 1973). Here, the suit is being maintained by the Justice Department, and the complaint alleges both a pattern or practice and an issue of general importance.

Reece in her deposition[11] and answers to interrogatories, and admissions made in defendant's brief, to the effect that defendant refused to rent certain apartments to single women without cars, and that defendant did not consider alimony and child support payments in determining whether a divorced woman would meet the defendant's requirements regarding ability to pay rent.

Defendant apparently does not dispute the fact that she adheres to the above-described policies. However, she does deny that the policies contravene the provisions of 42 U.S.C. § 3604, which provides:

[I]t shall be unlawful—

(a) to refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, or national origin.

In particular, defendant argues that she requires certain of her single woman tenants to have cars for their own protection,[12] and that she doesn't discriminate against divorced women.

█ It is somewhat difficult to perceive the impact of defendant's alimony-child support argument, since it has been poorly briefed by defense counsel. The only defense offered is a statement in Cleone Reece's unsigned deposition to the effect that divorced women "are sometimes the best pay." I find that this statement is insufficient to outweigh the fact that the defendant's requirement that potential tenants "qualify" by demonstrating an economic ability to pay rent is applied in such a manner as to place an unequal burden on women applicants. I therefore conclude that defendant has offered no legal defense to this issue, and that summary judgment should be granted based on the factual admissions of the defendant.

█ Defendant's policy toward single women is more clearcut: she simply does not rent certain of her apartments to single women unless they have cars. It is not denied that a similarly situated male, i. e., a single man without a car, would not be disqualified on that basis. The defendant attempts to justify this approach by stating that single women without cars are excluded from renting the apartments in question because the neighborhood in which the apartments are situated is poorly lit, and that the risk of assault or rape "or worse" against these women in walking to and from the apartments is great. I find this defense to be insufficient as a matter of law. A violation of the Fair Housing Act can be proved without establishing a malevolent or unlawful intent. *United States v. City of Black Jack*, 508 F.2d 1179, 1184 (8th Cir. 1974). Since this is so, an allegedly benign motivation, especially one as paternalistic and overbroad as the one presented here, cannot provide a defense.

This is simply a case where the plaintiff's *prima facie* case is made by the undisputed testimony of the defendants' depositions, briefs, and answers to interrogatories. Since the defendant has offered no defense sufficient to rebut the damaging impact of her own statements, I will grant summary judgment as to this issue.

In consideration of the foregoing,

IT IS HEREBY ORDERED:

1. That plaintiff's motion for summary judgment be, and the same hereby is, granted.

2. That defendants, Bert D. Reece and Cleone J. Reece, shall comply in all respects with the conciliation agreement described in the Amended Complaint herein. Cleone J. Reece is directed to pay to complainant Robert Westfall the sum of $500.00, and to Mr. Robert L. Stephens, Jr., the sum of $75.00 as an attorney's fee, within sixty (60) days of the filing of this order. In the event Mr. Westfall cannot be located, the sum of $500.00 is to be deposited to Mr.

---

11. *See* n. 8, *supra.*

12. The apartments in question are located in the area east of 19th Street North in Billings,

Montana, an area allegedly poorly lit and otherwise poorly suited for single women walking alone.

Westfall's credit in escrow until such time as Mr. Westfall can be located. Bert D. Reece is directed to pay to complainant George Chaplin the sum of $500.00, and to Mr. Robert L. Stephens, Jr., the sum of $75.00 as an attorney's fee, within sixty (60) days of the entry of this order. In the event Mr. Chaplin cannot be located within sixty days, the sum of $500.00 is to be deposited to Mr. Chaplin's credit in escrow until such time as Mr. Chaplin can be located. It is expected that the defendants will exercise due diligence in attempting to locate these complainants, and that the plaintiff will give the defendants all possible assistance in their attempts.

3. That Cleone J. Reece be, and she hereby is, enjoined from the continuation of any practices of discrimination on the basis of sex in the renting of her apartments. In particular, Cleone J. Reece is directed to cease and desist from declining to rent apartments to any applicant based on the fact that the applicant is a single woman without a car; she is further directed to give full consideration to alimony and child support payments in determining whether applicants qualify to rent her apartments.

4. The plaintiff is directed to file with the Court a statement detailing its intentions with regard to the racial discrimination allegations of the Amended Complaint which are not disposed of herein.

The Clerk will notify the parties of the entry of this order.

## APPENDIX I

### IN THE UNITED STATES DISTRICT COURT FOR
### THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| REEVES R. TAYLOR, ET AL. | )( | |
| | )( | |
| V. | )( | CIVIL ACTION NO. 74–H–850 |
| | )( | |
| FLETCHER PROPERTIES, ET AL. | )( | |

### ORDER

This court determined that it should reconsider defendants motion to dismiss, which was originally denied, in light of the fact—that the defendants had not yet filed their brief in support of the motion to dismiss and their response to plaintiffs' opposition to their motion to dismiss.

First, defendants James H. Winston, Thomas F. King, Jr., Guy W. Botts, Donald L. Goetz, Preston H. Haskill, Prime F. Osborn, and Malcomb M. Prine, individually and as trustees of the Barnett Winston Investment Trust allege that they are merely lessors of the property to one of the codefendants in this cause of action, and are wholly without any right or power to control the day-to-day operations of the business. Plaintiffs, however, allege facts to the contrary. Since a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief, this court must deny defendants' motion to dismiss.

Defendants further urge this court to dismiss plaintiffs' cause of action as to them for failure to satisfy the statute of limitations contained in the Fair Housing Act, § 810 and § 812, 42 U.S.C. § 3610 and § 3612.

Plaintiffs filed their charge with the Secretary of the Department of Housing and Urban Development on August 2, 1972. The alleged discriminating event occurred on July 23, 1972. The Secretary attempted conciliation between the parties but was unsuccessful. Plaintiffs were informed on May 20, 1974, that HUD's efforts at informal resolution of the complaint had ended and that plaintiffs had thirty days in which to file a civil action, which they subsequently filed within the thirty-day period.

Although there is case law to the contrary, this court basically agrees with the holding in *Brown v. Ballas*, 331 F.Supp. 1033 (N.D.Tex.1971). In that case, Judge Taylor held that the thirty days allotted plaintiff to bring suit under § 3610(d) begins from the time the required notice has been given. "The plaintiff will not be penalized because the agency conducting the administrative inquiry has failed to terminate its inquiry within the statutory limits . . . ." *Brown v. Ballas*, supra at 1036. Furthermore, in *James v. Hafler*, 320 F.Supp. 397 (W.D.Ga.1970), aff'd 457 F.2d 511 (5th Cir. 1972), the court stated, by way of dicta, that "it may be true that by following the conciliation scheme of Section 3610 defendants have tolled the 180-day limitation."

Furthermore, the Department of Housing and Urban Development has interpreted § 3610 of the Fair Housing Act as follows:

The thirty days provided in Section 810(d) of Title VIII within which a civil action may be commenced shall be deemed to begin with the receipt by the complainant of a notice from the Assistant Secretary that he does not intend to conciliate the matter. 24 C.F.R. § 105.16.

Thus HUD has interpreted Section 810 of the Act as allowing conciliation efforts to run their course before the statute of limitations begins to run.

The court also is of the opinion that public policy considerations compel a denial of defendants' motion. As the plaintiffs state in their brief, if this court adopts defendants' position, persons seeking vindication of their rights under the Fair Housing Act would be forced to file a civil action in federal district court while simultaneously pursuing informal conciliation before filing suit. For those reasons, defendants' motion to dismiss for failure to comply with the jurisdictional time limits of the Fair Housing Act is hereby denied.

Defendants further move to dismiss on the basis that plaintiffs have failed to satisfy the jurisdiction requisite to bringing a civil action against them under Section 810 of the Fair Housing Act, since they have never been named in a complaint filed with the Secretary of Housing and Urban Development. This court is of the opinion, however, that the fact that plaintiff alleged racial discrimination by Hollister House Apartments is sufficient identification to include the defendants, who admit they are the owners of Hollister House Apartments.

Defendant John R. Bennett filed a motion to dismiss based on basically the same grounds as discussed above. Defendant Bennett, President of Hollister Corporation, alleged that his interest in the Hollister House terminated prior to the plaintiffs' seeking an apartment there. Plaintiffs alleged, however, to the contrary. Accordingly defendant John R. Bennett's motion to dismiss is hereby denied in all respects for the reasons stated previously in this order.

If it appears at the trial that plaintiffs cannot meet their burden of proving the involvement of these defendants with the allegedly discriminatory act, then the court will entertain a motion to dismiss at that time.

It is so ORDERED.

DONE at Houston, Texas, on this 18th day of September, 1975.

s/ John V. Singleton, Jr.