**Roselind GENTRY, Plaintiff,**

v.

**NORTHEAST MANAGEMENT COMPANY, INC., and Central Village Apartments, Defendants.**

Civ. A. No. 3–78–0847–H.

United States District Court,
N. D. Texas,
Dallas Division.

July 25, 1979.

Edward B. Cloutman, III, Dallas, Tex., for plaintiff.

David A. White, Goodstein & Starr, Dallas, Tex., for defendants.

## OPINION

SANDERS, District Judge.

This is a housing discrimination suit alleging violation of Sections 1981, 1982, and 1988 of Title 42, United States Code. The Court has jurisdiction pursuant to 28 U.S.C. § 1343(3).

Plaintiff Roselind Gentry, a Black American female, contends that defendants Central Village Apartments ("Central") and Northeast Management Company, Inc., ("Northeast") refused to rent her an apartment in the fall of 1976 because of her race. Another defendant, El Presidente Apartments, was dismissed on Plaintiff's motion at the outset of this non-jury trial.

The Court finds that Plaintiff's race was not a factor in the failure of defendants to rent her an apartment; the Court concludes that defendants have not abridged any right of Plaintiff under 42 U.S.C. §§ 1981, 1982, or 1988; and the Court enters judgment for the defendants.

The controlling facts are, in the main, undisputed. Plaintiff, a Black American resident of Dallas County, Texas, visited Central Village Apartments in Grand Prairie, Dallas County, Texas, on one or more occasions in the latter part of September 1976. Plaintiff discussed rental or lease of an apartment with one or more representatives of Central. Northeast manages Central. Plaintiff submitted to Central in the name of her husband, Jessie J. Gentry, a "Tenancy Application" which contained, *inter alia*, salary information and credit and business references.

Central is subject to a Regulatory Agreement with the Federal Housing Commissioner, pursuant to which Central cannot rent apartments to families with incomes above the limit set by the Secretary of Housing and Urban Development ("HUD") for the Dallas-Fort Worth metropolitan area. At the times material to this litigation the applicable income limit for Central was $10,500.00 per year. The aggregate income of Plaintiff's immediate family as reflected on the (Jessie Gentry) application submitted to Central was in excess of $12,000.00 per year.

After receiving the application, Central's manager made a routine credit check. The manager determined that the credit rating of Jessie J. Gentry was unsatisfactory, based upon a conversation with a creditor (Smart Finance) which had lent money to Mr. Gentry. The manager further found that Mr. Gentry had previously been evicted from Royal Oaks Apartments (also managed by Northeast) for failure to pay his rent. The manager also learned that Plaintiff Roselind Gentry frequently paid her rent late at the apartment complex (St. John's Medallion) where Plaintiff was living at the time she made the application in question here.

The manager testified that the Jessie J. Gentry application was unacceptable on at least three counts—poor credit history, poor apartment rental history, and income ($12,000 per year plus) in excess of allowable income limits ($10,500 per year) for Central.

During the period September 1976–May 1977, Central had both black and white tenants, with the heavy preponderance being white. During this same period the "move-in/move-out" figures (which Central is required by HUD to maintain) reflect that almost the same number of whites moved in as moved out of the apartments, while the number of black families dropped from 14 to 8.

Defendants keep all applications for apartments on hand for an indefinite period; such applications do not show race. The number and race of applicants during the September 1976–May 1977 period is not in evidence.

Plaintiff did not submit an application to defendants in her own name; it is disputed whether that alternative was suggested to her. Central's manager and assistant manager testified, in substance, that they retain all applications, that they do not try to call applicants when a vacancy occurs, and that it is the responsibility of applicants to stay in touch with Central.

The number of visits Plaintiff made to Central in 1976 and what transpired on each visit is in dispute. However, I find that the weight and quality of Plaintiff's evidence falls short of the burden of proof which Plaintiff must sustain in order to prevail. Indeed, defendants' version of events is the more acceptable: that after Plaintiff returned the Jessie Gentry application and after the credit and apartment history check, Plaintiff returned to Central to make a deposit on the apartment; that the manager told plaintiff that the Jessie Gentry application was unacceptable (for the reasons hereinabove set forth); that upon Plaintiff stating that she was separated from Jessie Gentry, Central's manager suggested to Plaintiff that she submit a new application for herself and her children only. It is uncontroverted that Plaintiff did not file an application for herself with Central.

In order to recover Plaintiff must prove that her race was a (but not the sole) factor in the refusal of defendants to rent or lease. *Payne v. Bracher*, 582 F.2d 17 (5th Cir. 1978). Plaintiff has not provided that proof. The evidence shows that defendants acted upon the basis of nonracial reasons in refusing the application in the name of Jessie Gentry.

The statistical evidence regarding the "move-in/move-out" rate, and the number of white and black families living at Central during the period September 1976–May 1977 is, like the statistical evidence in *Robinson v. City of Dallas*, 514 F.2d 1271 (5th Cir. 1975), insufficient to show racial discrimination. Of course, statistics are not conclusive *per se* on the issue of racial discrimination. *United States v. West Peachtree Tenth Corp.*, 437 F.2d 221, 227 (5th Cir. 1971). Although relevant statistics may show a prima facie case of racial discrimination and thus shift to defendant the burden of persuasion, *United States v. Hayes International Corp.*, 456 F.2d 112 (5th Cir. 1972), the statistics offered here in behalf of plaintiff are only remotely relevant, if at all, and without more are simply inadequate to make out even a prima facie case of racial discrimination by these defendants.

Defendants' request for attorneys fees is not warranted and is refused. In all other respects judgment will be entered for defendants.

SO ORDERED.