**Patrick Matthew RYAN, Plaintiff,**

v.

**Gayle RAMSEY, et al., Defendants.**

**Civil Action No. H–95–5264.**

United States District Court,
S.D. Texas.

Aug. 1, 1996.

---

Shimon Kaplan, East Texas Legal Services, Beaumont, TX, for Plaintiff.

Andrew P. McCormick, McCormick & McNeel, Houston, TX, for Defendants.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is Defendants' Motion to Dismiss (# 9). Having considered the motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that the defendants' motion should be denied.

### I. *Background*

Plaintiff Patrick M. Ryan ("Ryan"), a resident of Houston, Texas, has Acquired Immune Deficiency Syndrome ("AIDS"). Being unable to work because of his illness, Ryan began receiving disability benefits from the Social Security Administration in January 1995. Ryan had been living in the same apartment since 1987; however, in July 1995, he started looking for a new place to live.

Ryan learned that there was a vacancy at the Oasis Apartments. The Oasis Apartments are owned by Defendants Gayle Ramsey ("Ramsey"), James Sell, and Brenda Sell. Ryan contacted Ramsey, who also acted as the rental agent for the Oasis Apartments, to inquire about renting an apartment. On July 9, 1995, Ramsey showed Ryan a one-bedroom apartment and informed him that the monthly rent for the apartment was $315.00. Ryan told Ramsey that he was receiving Social Security disability benefits.

After being shown the apartment, Ryan decided to rent it and filled out a rental application form. In the "Personal Information" section of the application, Ryan identified his present and previous addresses, including the names of previous landlords and the monthly rent he paid at each location. Ryan also noted that his rent at his present address was $275.00 per month and that he had paid $240.00 per month for rent at his previous address. In the "Employment Information" section of the application, Ryan identified himself as retired, and beside a query of "Other income from" Ryan wrote "Social Security Disability." In the "Credit References" area of the application, Ryan filled in "NA" following a question of "Bank/Branch (Checking)," and in response to a query of "Bank/Branch (Savings)," Ryan wrote "First Interstate Bank—Shepherd Square" and provided a telephone number. Ryan left blank two other lines on the application which asked for additional credit references. After filling out the form, Ramsey allegedly told Ryan that she would get back to him within the next two days.

Ryan, however, did not hear from Ramsey within two days. On July 11, 1995, Ryan

telephoned Ramsey and left a message on her answering machine. Ramsey returned Ryan's telephone call on July 14, 1995, and, according to Ryan, stated that she had not been able to call him because she had been busy with other things. Ryan also alleges that Ramsey told him that he did not have to worry about his application competing with other potential tenants, because he was the only person to whom she had shown the apartment. Yet, on July 15, 1995, Ramsey left a message on Ryan's answering machine informing him that the apartment would not be rented to him. According to Ramsey, she rejected Ryan's application for financial reasons.

Ryan initiated this action on November 13, 1995, alleging that the defendants had violated the Fair Housing Act, 42 U.S.C. § 3604 *et seq.* ("FHA"), by refusing to rent the apartment to him because of his handicap.

## II. *Analysis*

### A. *Standard for Dismissal Under Rule 12(b)(6)*

Under the Federal Rules of Civil Procedure, defendants may move to dismiss based on the plaintiff's failure to state a claim upon which relief can be granted. FED.R.CIV.P. 12(b)(6). If matters outside the pleadings are presented to and not excluded by the court, such a motion is to be treated as one for summary judgment and disposed of as provided by Rule 56. *Id.* In this case, the defendants have attached two affidavits to their motion to dismiss, and the plaintiff has attached a copy of the housing discrimination complaint he filed with the Department of Housing and Urban Development to his brief in opposition to the defendants' motion to dismiss. These matters outside the pleadings have not been excluded by the court. In addition, both parties have requested that the defendants' motion be treated as one for summary judgment. Accordingly, the defendants' motion to dismiss will be analyzed under the summary judgment standard.

### B. *Summary Judgment Standard*

Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for his motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which he believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Williams v. Adams,* 836 F.2d 958, 960 (5th Cir.1988). Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514–15; *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert. denied,* 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). The controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party. *Palmer v. BRG of Ga., Inc.,* 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 402–03 n. 5, 112 L.Ed.2d 349 (1990); *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14; *Judwin Properties, Inc. v. United States Fire Ins. Co.,* 973 F.2d 432, 435 (5th Cir. 1992). Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552. "In such situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23, 106 S.Ct. at 2552.

### C. *Fair Housing Act*

■ Ryan alleges that the defendants violated the FHA by refusing to rent an apart-

ment to him because of his handicap. In evaluating FHA claims, courts employ the same method of analysis as utilized in Title VII employment discrimination cases. *See Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 988 (4th Cir.1984) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); *Secretary, HUD on Behalf of Herron v. Blackwell*, 908 F.2d 864, 870 (11th Cir.1990) (citing *Pollitt v. Bramel*, 669 F.Supp. 172, 175 (S.D.Ohio 1987)); *Williams v. 5300 Columbia Pike Corp.*, 891 F.Supp. 1169, 1178 (E.D.Va.1995); *Jiminez v. Southridge Co-op, Section I, Inc.*, 626 F.Supp. 732, 734 (E.D.N.Y.1985).

The 1988 Amendments to the FHA, which became effective March 12, 1989, expanded the FHA to prohibit discrimination in housing based upon a handicap and to allow private litigants the right to challenge allegedly discriminatory housing practices. *See* 42 U.S.C. § 3613(a); *Support Ministries for Persons with AIDS, Inc. v. Village of Waterford*, 808 F.Supp. 120, 129 (N.D.N.Y.1992); *A.F.A.P.S. v. Regulations & Permits Admin.*, 740 F.Supp. 95, 102 (D.P.R.1990). Included among the FHA's prohibitions is discrimination on the basis of a physical or mental handicap. *Id.* Section 3604 makes it unlawful:

> [t]o discriminate in the sale or rental, or to otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap of—
> (A) that buyer or renter;
> (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
> (C) any person associated with that buyer or renter.

42 U.S.C. § 3604(f)(1); *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 530 (5th Cir.1996); *Robinson v. City of Friendswood*, 890 F.Supp. 616, 619 n. 1 (S.D.Tex. 1995); *Support Ministries for Persons with AIDS, Inc.*, 808 F.Supp. at 129; *A.F.A.P.S.*, 740 F.Supp. at 102.

█ "There is little question that persons terminally ill with AIDS are considered 'handicapped' within the meaning of the Fair Housing Act." *A.F.A.P.S.*, 740 F.Supp. at 103; *see Support Ministries for Persons with AIDS, Inc.*, 808 F.Supp. at 129–30. Indeed, the legislative history of the 1988 amendments to the FHA reveals that Congress intended to include AIDS sufferers within the class of protected persons:

> The Fair Housing Act, . . ., as amended, is a clear pronouncement of a rational commitment to end the unnecessary exclusion of persons with handicaps from the American mainstream. It repudiates the use of stereotypes and ignorance, and mandates that persons with handicaps be considered as individuals. Generalized perceptions about disabilities and unfounded speculations about threats to safety are specifically rejected as grounds to justify exclusion.

> \*   \*   \*   \*   \*   \*

> People with Acquired Immune Deficiency Syndrome (AIDS) and people who test positive for the AIDS virus have been evicted because of an erroneous belief that they pose a health risk to others.

> All of these groups have experienced discrimination because of prejudice and aversion—because they make non-handicapped people uncomfortable. H.R. 1158 clearly prohibits the use of stereotypes and prejudice to deny critically needed housing to handicapped persons. The right to be free from housing discrimination is essential to the goal of independent living.

1988 U.S.Code Cong. & Admin.News 2173 at 2179; *Support Ministries for Persons with AIDS, Inc.*, 808 F.Supp. at 130; *A.F.A.P.S.*, 740 F.Supp. at 103.

Section 3602 defines "handicap" as follows:

> (h) "Handicap" means, with respect to a person—
> (1) a physical or mental impairment which substantially limits one or more of such person's major life activities,
> (2) a record of having such an impairment, or
> (3) being regarded as having such an impairment,
> but such term does not include current, illegal use of or addiction to a controlled substance (as defined in section 802 of Title 21).

42 U.S.C. § 3602(h). This definition mirrors the definition of "handicap" contained in the Americans with Disabilities Act and the Rehabilitation Act of 1973. *Compare* 42 U.S.C. § 3602(h); 42 U.S.C. § 12102(2); 29 U.S.C. § 706(8)(B).

Interpreting the ADA, this district has found that persons with AIDS are "disabled" within the meaning of the Act. *See EEOC v. Chemtech Int'l Corp.*, No. H–94–2848, 1995 WL 608355, at *1 (S.D.Tex. July 21, 1995). Applying this analysis to the case at bar, it is apparent that Ryan is handicapped within the meaning of the FHA. *See Hogar Agua y Vida en el Desierto v. Suarez*, 829 F.Supp. 19, 21 n. 1 (D.P.R.1993); *A.F.A.P.S.*, 740 F.Supp. at 103; *Baxter v. City of Belleville*, 720 F.Supp. 720, 729 (S.D.Ill.1989); *Support Ministries for Persons with AIDS, Inc.*, 808 F.Supp. at 129–30; 24 C.F.R. § 100.201(a)(2); *see also United States v. Borough of Audubon*, 797 F.Supp. 353, 359 (D.N.J.1991), *aff'd*, 968 F.2d 14 (3d Cir.1992).

#### D. *Prima Facie Case*

■ A violation of § 3604 of the FHA can be established by showing either discriminatory intent (or treatment) or significant discriminatory effect. *Simms v. First Gibraltar Bank*, 83 F.3d 1546, 1555 (5th Cir. 1996) (citing *Hanson v. Veterans Admin.*, 800 F.2d 1381, 1386 (5th Cir.1986)). In order to show that a defendant has acted with a discriminatory intent, a plaintiff is not required to demonstrate that the defendant was motivated by a dislike for or an animosity towards persons with disabilities. Indeed, such discrimination can also result from the defendant's false and over-protective assumptions about the needs of handicapped persons or from unfounded fears of difficulties or problems that might arise due to a handicapped person's tenancy. *Bryant Woods Inn, Inc. v. Howard County*, 911 F.Supp. 918, 929 (D.Md.1996). The "plaintiff need only show that the handicap of the potential residents, a protected group under the FHA, was in some part the basis for the policy being challenged." *Potomac Group Home Corp. v. Montgomery County*, 823 F.Supp. 1285, 1295 (D.Md.1993) (citing *Baxter*, 720 F.Supp. at 729). A plaintiff bringing a claim under the FHA "is not required to

establish that his denial of housing was motivated solely by [handicap] discrimination." *Marable v. H. Walker & Assocs.*, 644 F.2d 390, 395 (5th Cir.1981); *see A.F.A.P.S.*, 740 F.Supp. at 103. It is sufficient that his handicap was one significant factor considered by the defendants in dealing with the plaintiff. *Id.* Discriminatory intent may be inferred from the totality of the circumstances. *LeBlanc–Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir.1995).

■ To demonstrate a violation of the FHA under the disparate impact analysis, a plaintiff need only prove that the defendant's conduct actually or predictably results in discrimination or has a discriminatory effect. *Support Ministries for Persons with AIDS, Inc.*, 808 F.Supp. at 136, *see also Pfaff v. HUD*, No. 94–70898, 1996 WL 363613, at *4–5 (9th Cir. July 2, 1996). "The plaintiff need make no showing whatsoever that the action resulting in ... discrimination in housing was ... motivated [by a desire to discriminate]. Effect, and not motivation, is the touchstone." *United States v. City of Black Jack*, 508 F.2d 1179, 1185 (8th Cir.1974), *cert. denied*, 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 694 (1975). Therefore, in a disparate impact case, it is not necessary that a plaintiff show any discriminatory motive on the part of the defendant. *Sobel v. Yeshiva Univ.*, 839 F.2d 18, 29 (2d Cir.1988), *cert. denied*, 490 U.S. 1105, 109 S.Ct. 3154, 104 L.Ed.2d 1018 (1989). In fact, the United States Supreme Court has recognized that "disparate impact theories are particularly important in protecting the rights of the handicapped, because those rights are generally threatened by adverse consequences for the disabled of neutral legislation, rather than by policies established for people with disabilities." *Bryant Woods Inn, Inc.*, 911 F.Supp. at 939 (citing *Alexander v. Choate*, 469 U.S. 287, 295, 105 S.Ct. 712, 717, 83 L.Ed.2d 661 (1985)). The Seventh Circuit has set forth four factors to be analyzed when evaluating a discriminatory impact claim: (1) how strong is the plaintiff's showing of discriminatory effect; (2) is there some evidence of discriminatory intent; (3) what is the defendant's interest in taking the action complained of; and (4) does the plaintiff seek

to compel the defendant affirmatively to provide housing for the handicapped or merely to restrain the defendants from interfering with individual property owners who wish to provide such housing. *Support Ministries for Persons with AIDS, Inc.*, 808 F.Supp. at 136 (citing *Metropolitan Housing Dev. Corp. v. Village of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir.1977), *cert. denied*, 434 U.S. 1025, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978)). Although these factors were developed in a racial discrimination case under the FHA, they are equally applicable to the handicap amendments. *See id.*

### 1. *Discriminatory Intent*

The Fifth Circuit in *Simms* quoted a previous holding in an ADEA case:

A jury issue will be presented and a plaintiff can avoid summary judgment and judgment as a matter of law if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that age was a determinative factor in the actions of which plaintiff complains.

*Simms*, 83 F.3d at 1556 (citing *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir.1996) (en banc)). The *Simms* court applied the holding in *Rhodes* in a case similar to the case at bar—an FHA action in which the question was whether the plaintiff had presented sufficient evidence for the jury to make a reasonable inference that race motivated the lender's rejection of Simms' proposal. *Id.* "The protected trait must be only 'one significant factor' in the challenged decision to violate the FHA." *Simms*, 83 F.3d at 1556 n. 30 (citing *Woods–Drake v. Lundy*, 667 F.2d 1198, 1202 (5th Cir.1982); *Hanson*, 800 F.2d at 1386). The court stated that it was not enough merely to create fact issues concerning the lender's reasons for refusing to proceed with the loan—the evidence must also create a reasonable inference that race was a significant factor in the refusal. *Id.* at 1556. The defendant's refusal may have been unsound, unfair, or even unlawful, but it did not violate the FHA if there existed no evidence from which a jury

could have reasonably inferred that race was a significant factor in the defendants' decision. *Id.*

#### a. *Defendants' Reasons For Refusing to Rent to Ryan*

Here, Ryan is a member of a class protected by the FHA because he suffers from AIDS. Ryan states in his complaint that after he was denied the opportunity to rent the defendants' apartment, he moved into another apartment that had a monthly rent of $395.00, which is $80.00 more per month than the rent he would have been charged had he been permitted to rent the defendants' apartment. The defendants point to no evidence in the record that refutes Ryan's statement. Instead, the defendants claim that they were entitled to reject Ryan's application due to financial reasons, as it appeared to Ramsey that Ryan could not afford the apartment and, therefore, was not qualified to rent it. In their motion to dismiss, the defendants claim that Ryan provided only "scant" information at the time he filled out the application and that Ramsey had no other information about Ryan's economic status at that time. Specifically, in their reply to Ryan's opposition to their motion to dismiss, the defendants point out that Ryan did not include on his application the amount of Social Security disability benefits he received each month.

A landlord operating in the private sector can select the tenants he will accept so long as the landlord does not discriminate on one of the statutorily condemned bases. *Boyd v. Lefrak Org.*, 509 F.2d 1110, 1114 (2d Cir.1975). Such a landlord may seek assurances that the prospective tenants will be able to meet their rental requirements. *Id.* There is no requirement that welfare recipients, or any other individuals, secure apartments without regard to their ability to pay. *Id.* Landlords may show such a non-discriminatory selection of tenants through the use of formulas, rules, criteria, and policies that are impartially and uniformly applied to all applicants. *See Marable*, 644 F.2d at 397; *Sandford v. R.L. Coleman Realty Co.*, 573 F.2d 173, 177 (4th Cir. 1978); *Boyd*, 509 F.2d at 1110–15; *Gentry v.*

*Northeast Management Co.,* 472 F.Supp. 1248, 1249–50 (N.D.Tex.1979).

In this case, the defendants do not indicate the method by which they evaluated Ryan's application to conclude that he could not afford the monthly rent of $315.00. While Ryan did not provide any credit references in his application, he did provide the name and telephone number of the bank at which he had a savings account and also included the names and telephone numbers of the two apartment complexes at which he had previously resided. There is no indication in the record that the defendants contacted any of these references to assess Ryan's qualifications. There is also no evidence that they ever inquired of Ryan exactly how much he received in Social Security disability benefits. Ryan's transcription of Ramsey's telephone message, which is deemed to be accurate for the purpose of evaluating the defendants' motion, states the following:

> Pat—Hi. This is Gayle Ramsey. I'm sorry to have taken so long to get back to you about this, but I think that I really want to rent this to somebody who actually has a job. I'm just very nervous about this disability thing because I went through a lot of this with Johnny and then, of course that turned out so disastrously—not that that's the kind of thing which you're likely to do—that is—take up drugs and booze and everything else and spend the rent money, but nevertheless I'm just not comfortable with this and I guess at this point I'd rather go ahead and run another ad and continue to interview tenants, but I do appreciate your interest. It was very nice meeting you and I'm just hopeful that you're not too disappointed. I've just been uncomfortable about this though. I really want someone to have a job and predictable income—but good luck to you Pat. Thank you.

According to the message, Ramsey wished to rent only to someone who actually had a job and predictable income. These requirements, however, do not appear on the defendants' application form. The defendants also do not contend that they notified Ryan prior to or concurrently with his application that they would evaluate his application based on these criteria, nor is there any evidence that these requirements are uniformly applied to all applicants for apartments at the complex. While the application clearly shows that Ryan was not employed, the defendants do not reveal how they determined that Ryan's income would not be "predictable."

Additionally, Ramsey apparently used information not contained in the application form when evaluating prospective tenants. In Ramsey's affidavit, she refers to Ryan paying a $275.00 monthly rent at his former apartment when he was employed. Ryan, however, did not provide any information on the application form that specifies the dates during which he was employed—the only reference to Ryan's employment on the form was his response in the employment information section that he was "retired." Hence, there is a fact issue regarding what information Ramsey actually used in evaluating prospective tenants like Ryan.

The defendants emphasize that Ryan did not include in his application the amount of Social Security disability benefit income he received each month. The defendants claim that Ryan's omission of this information meant that the application form was not complete, and they were, therefore, entitled to reject Ryan's application because he did not establish that he was qualified to rent the apartment. In *Simms,* a similar issue arose concerning a prospective borrower's obligation to provide sufficient information to a lender. *See* 83 F.3d at 1552. In that case, the borrower's expert witness admitted that, once the lender had asked the borrower for the information necessary to evaluate the loan application, the lender had no further obligation to continue to ask for the information that the borrower did not initially provide. *Id.* The Fifth Circuit held that such a failure to solicit additional information from a borrower in order to remedy flaws in the borrower's application was not a sign of prohibited racial animus against the borrower absent a showing that the lender had treated other, "non-protected" applicants differently. *Id.* at 1558.

In this case, however, it is unclear whether the defendants' application form actually asked Ryan to provide all of the information

necessary to evaluate his application according to their criteria. On the application form, Ryan wrote "Social Security Disability" beside the query "Other income from." Viewed in the light most favorable to Ryan, it is reasonable to infer that Ryan could have properly understood this query to inquire about the source, not the amount, of his other income. In any event, the defendants do not indicate how they used this information to evaluate Ryan's financial qualifications. While the defendants admit that Ryan's response was "unclear" to them, they do not indicate how they acted to resolve this uncertainty in reaching their conclusion that Ryan as an individual (and not as a hypothetical recipient of Social Security disability benefits) was financially unqualified to rent the apartment. If they were truly concerned about his financial ability, it would be reasonable to expect Ramsey to have inquired about the amount of his disability benefits when she called Ryan on July 14. In any event, because there is a fact issue as to whether the defendants initially asked Ryan for all of the information they required to evaluate his application, this case is distinguishable from the Fifth Circuit's holding in *Simms*.

Defendants argue that Ryan filed a motion *in forma pauperis* to avoid having to pay court costs. According to the defendants, this constitutes evidence that Ryan could not afford the apartment. The Supreme Court, however, has held that one need not be absolutely destitute to qualify for *in forma pauperis* status. *Adkins v. E.I. DuPont De Nemours & Co., Inc.*, 335 U.S. 331, 339, 69 S.Ct. 85, 89, 93 L.Ed. 43 (1948). Such a benefit is available when one cannot pay or give security for such costs and still be able to provide himself and his dependents with the necessities of life. *Id.* Therefore, the fact that Ryan is proceeding in this case *in forma pauperis* does not necessarily constitute proof that Ryan has insufficient resources to ensure that he can provide himself with life's necessities, including shelter. Instead, it is possible to infer that this simply means that Ryan does not have resources beyond those required to meet his essential needs. Apparently, he has adequate funds to pay his current $395.00 monthly rental.

As the evidence raises a fact issue as to whether the defendants' stated reasons for refusing to rent the apartment to Ryan are the actual reasons for their refusal, the first of the *Rhodes* requirements has been met.

### b. Ryan's Handicap as a Factor in the Rental Decision

#### (1). Defendants' Knowledge of Ryan's Handicap

■■■ Defendants contend that they cannot be liable as a matter of law for discrimination against Ryan because they had no knowledge of his handicap. In four cases cited by the defendants, summary judgment was granted in favor of employers who had allegedly discriminated by discharging an employee due to the employee's disability. *See Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 933 (7th Cir.1995); *Grinstead v. Pool Co.*, No. 93–2320, 1994 WL 25515, at *2 (E.D.La. Jan. 20, 1994), *aff'd*, 26 F.3d 1118 (5th Cir. June 13, 1994); *Dutson v. Farmers Ins. Exch.*, 815 F.Supp. 349, 352 (D.Or.1993), *aff'd*, 35 F.3d 570 (9th Cir.1994); *McIntyre v. Kroger Co.*, 863 F.Supp. 355, 358–59 (N.D.Tex.1994). In each case, the employers had adduced evidence that they had no knowledge of the employee's disability at the time of the discharge decision. *Hedberg*, 47 F.3d at 933; *Grinstead*, 1994 WL 25515, at *2; *Dutson*, 815 F.Supp. at 352; *McIntyre*, 863 F.Supp. at 358–59.

This case is distinguishable from the cases cited by the defendants. First, Ryan expressly stated on the application form that the source of his "other income" was Social Security disability benefits. Second, in her affidavit, Ramsey admits referring to a "disability thing" in the message she left on Ryan's answering machine. Therefore, a reasonable inference can be drawn that, at the time they refused to rent the apartment to Ryan, the defendants were aware that Ryan was disabled. This approach is supported by the FHA's definition of "handicap," which includes a person with a record of having such an impairment or being regarded as having such an impairment. 42 U.S.C. § 3602(h)(2) and (3). Under this definition of "handicap," a fact finder could reasonably infer that even if Ramsey was unaware of his

disability, the fact that he was receiving Social Security disability benefits at least led her to regard him as having such an impairment.

The defendants point out that Ryan, in his statement to the Office of Fair Housing and Equal Opportunity, states that he never told Ramsey that his disability was AIDS and that Ramsey never asked Ryan about his disability. While Ryan may not have told Ramsey that he had AIDS, Ramsey did not need to know the exact nature of Ryan's disability in order to regard him as disabled. In fact, the regulations giving effect to the FHA's prohibition on housing discrimination against the handicapped state that it is unlawful for a landlord to make such an inquiry as to the nature or severity of a prospective tenant's handicap. 24 C.F.R. § 100.202(c).

### (2). Consideration of Ryan's Handicap by Defendants

■ In the message Ramsey left on Ryan's answering machine, Ramsey states that she had experienced problems with the "disability thing" before, with regard to a previous tenant named "Johnny." It can be reasonably inferred from Ramsey's comments in the message that "Johnny's" problem was not an innate inability to pay the rent—instead, it can be inferred that the difficulty Ramsey experienced with "Johnny" was his wasting his benefits on "drugs and booze and everything else" and otherwise spending the available rent money. Although Ramsey concedes on the message that "that's not the kind of thing that you're likely to do," there is nevertheless a reasonable inference that Ramsey, having had a bad experience with a tenant who received disability benefits, did not wish to rent an apartment to another such tenant. A landlord's past negative experiences with members of a protected class, however, is not a legitimate justification for subsequent discrimination against other members of the protected class. See Baumgardner v. Secretary, HUD on Behalf of Holley, 960 F.2d 572, 574–75, 579 (6th Cir.1992). In Baumgardner, the Sixth Circuit affirmed a holding that a landlord who refused to rent to males because such persons were "messy and unclean" was guilty of discrimination even

though the landlord had in fact experienced such difficulties in the past. Id. Applying the Baumgardner approach in cases of discrimination against the handicapped is consistent with the FHA's purpose to ensure that such persons are treated as individuals, not on the basis of stereotypes, when being considered for housing. See Support Ministries for Persons with AIDS, Inc., 808 F.Supp. at 130.

Defendants offer affidavits from Ramsey and a tenant at the defendants' apartment complex, Tom Caldwell ("Caldwell"), which they claim establish that the defendants do not discriminate against persons who are HIV-positive or who have AIDS. At best, however, the affidavits establish that HIV-positive persons, such as Caldwell, reside at the complex, but they do not address whether persons with AIDS reside there. Moreover, it is possible for housing discrimination to exist even though all members of the protected group are not discriminated against by the landlord. United States v. Reece, 457 F.Supp. 43, 48 (D.Mont.1978). In this case, a fact finder could infer that Ryan was not permitted to rent an apartment at the defendants' complex due to his status as a disabled person, which entitled him to receive Social Security disability benefits. It could be inferred, therefore, that, through their rental policies, the defendants considered the disabled status of prospective tenants in a way that did not permit such tenants to be evaluated as individuals, free of the stereotypes and generalized perceptions concerning handicapped persons.

Because a fact issue exists as to whether Ryan's disability was a determinative factor in the defendants' refusal to rent to him, the second of the Rhodes requirements has been met. Accordingly, the defendants are not entitled to summary judgment on the discriminatory intent theory of discrimination under the FHA.

### 2. Discriminatory Impact

■ Additionally, the record demonstrates that fact issues exist concerning whether Ryan has set forth a claim of discrimination under the discriminatory impact analysis, using the four-factor "balancing test" discussed by the Seventh Circuit. See

*Support Ministries for Persons with AIDS, Inc.,* 808 F.Supp. at 136. Applying this test, a showing has been made of a discriminatory effect resulting from the defendants' actions because Ryan, a member of a protected class due to his handicap, has been denied the ability to rent an available apartment. While the defendants have pointed to Caldwell's affidavit as evidence that no discrimination against persons with disabilities occurs at their apartment complex, Caldwell's affidavit, at best, suggests only that the defendants do not discriminate against persons who are HIV-positive. This affidavit does not, however, establish that the defendants do not discriminate against any other disabled persons, particularly disabled persons who receive Social Security disability benefits. As noted above, there is some evidence of discriminatory intent on the part of the defendants, as one could infer from Ramsey's telephone message that Ryan's status as a disabled person was considered by the defendants in declining to rent the apartment to him. While the defendants' claim that their interest in denying Ryan the apartment was merely a financial one, the evidence does not establish that Ryan could not afford the apartment or that the defendants applied reasonable criteria to determine whether Ryan had sufficient income to pay the monthly rent. Moreover, even if the defendants' real interest was to ensure that only persons who were currently employed, rather than those receiving Social Security disability benefits, could rent their apartments, an individual's status as a Social Security disability benefit recipient is inextricably linked to his status as a disabled person. Finally, Ryan is attempting to compel the defendants to provide housing to a handicapped person and is not attempting to restrain anyone from interfering with other persons wishing to provide housing to the handicapped. As there is sufficient evidence to support a discriminatory impact claim in this case, the defendants, likewise, are not entitled to summary judgment on this theory of liability under the FHA.

## IV. *Conclusion*

Accordingly, the defendants' motion to dismiss, treated as a motion for summary judg-

ment, is DENIED, as there exist outstanding issues of material fact under both the "discriminatory intent" and the "discriminatory impact" models for proving housing discrimination under the FHA.

IT IS SO ORDERED.

SIGNED at Houston, Texas, on this 1st day of August, 1996.