### Jill E. MITCHELL

v.

### CHAMPS SPORTS.

#### No. 1:98–MC–43.

United States District Court,
E.D. Texas,
Beaumont Division.

Dec. 15, 1998.

Barry Cecil Bennett, Gerald Eddins & Associates, Port Arthur, TX, for plaintiff.

Jill E. Mitchell, Beaumont, TX, pro se.

### MEMORANDUM ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

HEARTFIELD, District Judge.

The court heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge, at Beaumont, Texas, for consideration pursuant to applicable laws and orders of this court. The court has received and considered the Report of the United States Magistrate Judge pursuant to such order, along with the record, pleadings and all available evidence. No objections to the Report of the United States Magistrate Judge were filed by the parties.

Accordingly, the findings of fact and conclusions of law of the magistrate judge are correct and the report of the magistrate judge is **ADOPTED**. It is therefore

**ORDERED** and **ADJUDGED** that movant's motion to proceed *in forma pauperis* is **GRANTED**. The Clerk of Court is instructed to file movant's proposed complaint. It is further

**ORDERED** and **ADJUDGED** that movant's motion for appointment of counsel is **GRANTED**. The Honorable Barry Bennett, Attorney at Law, P.O. Box 2564, Port Arthur, TX 77643, is hereby **APPOINTED** to represent movant. Appointed counsel may submit an *in camera* "Anders brief" and request to be excused, should it become obvious that this action is frivolous or has little chance of success on the merits. The Clerk shall provide appointed counsel with a complete copy file.

*REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: MOTIONS TO PROCEED IN FORMA PAUPERIS AND FOR APPOINTMENT OF COUNSEL*

HINES, United States Magistrate Judge.

Pending are Jill E. Mitchell's motions to proceed *in forma pauperis* and for court appointed counsel, filed in connection with a proposed action alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (1994).

The motions are referred to the undersigned United States Magistrate Judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law. *See* 28 U.S.C. § 636(b)(1)(B) and Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I. BACKGROUND / PROCEDURAL HISTORY

Champs Sports hired Mitchell, a black female, on September 13, 1996 to work as a full-time management trainee in defendant's retail store in Beaumont, Texas.

In November 1996, movant alleges that the store manager, Mr. Manuel Connell, and other employees began treating her negatively because of her gender and race, and this eventually lead to her demotion and replacement by a white male in January 1997. Movant eventually resigned or was terminated in the summer of 1997.[1]

Believing that Champs Sports discriminated against her, Mitchell filed a charge of discrimination on August 12, 1997 with the Equal Employment Opportunity Commission ("EEOC"). (Dockt. at 3.) On April 21, 1998, the EEOC issued Mitchell a "Dismissal and Notice of Rights" letter that allowed her to initiate a civil action in federal court. Mitchell tendered for filing this proposed action on July 21, 1998. She contemporaneously moved to proceed *in forma pauperis* and for court appointed counsel.[2]

## II. TIMELINESS

█ The first consideration is whether movant's complaint was filed timely. Unless it was, then consideration of the merits would be solely an academic exercise.

█ A civil action under Title VII must be brought within ninety days of receipt of the right-to-sue letter. *See* 42 U.S.C. § 2000e–5(f)(1); *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir.1996);

---

1. There is disagreement about whether the movant voluntarily resigned or was terminated. Movant insists that she resigned voluntarily sometime in May 1997. Champs Sports claims that movant was terminated sometime in the summer of 1997.

2. "Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without payment of fees, costs, or security." 42 U.S.C. § 2000e–5(f)(1).

*Berry v. CIGNA/RSI–CIGNA,* 975 F.2d 1188, 1191 (5th Cir.1992); *Price v. Digital Equip. Corp.,* 846 F.2d 1026, 1027 (5th Cir.1988); *Espinoza v. Missouri Pac. R.R.,* 754 F.2d 1247, 1248 (5th Cir.1985).

■ The ninety-day filing requirement is a statutory precondition to maintaining a cause of action in federal court, *Smith v. Flagship Int'l,* 609 F.Supp. 58, 61 (N.D.Tex.1985) (*citing Sessions v. Rusk State Hosp.,* 648 F.2d 1066, 1070 (5th Cir. 1981)), and is treated as a statute of limitations for all purposes. *See Espinoza,* 754 F.2d at 1248 n. 1; *Nilsen,* 701 F.2d at 562. In the Fifth Circuit, this rule is strictly applied. *See Id.* at 1248–50; *Mouriz v. Avondale Shipyards, Inc.,* 428 F.Supp. 1025, 1027 (E.D.La.1977).

In the case *sub judice,* the EEOC issued movant a notice of right-to-sue on April 21, 1997. She filed this suit on July 21, 1998, ninety-one days after mailing of the right-to-sue letter. If movant had received the letter on April 21, 1996, she would be barred from prosecuting this action. However, it is highly unlikely for movant to have received the letter on the same day it was mailed. Therefore, movant's filing of this action is considered timely.[3]

### III. THE ORAL HEARING

On September 16, 1998, the undersigned convened an oral hearing at the Jack Brooks Federal Building, Beaumont, Texas to consider Mitchell's motions. She was afforded an opportunity to testify, and to state in her own words the facts supporting her proposed suit.

### A. Movant's Allegations of Discrimination

At the hearing, movant testified that she is the offspring of a mixed-race marriage. Her mother is white and her father is black. Movant is light-skinned, and be-

cause of this, many people consider her of mixed Hispanic and European descent.

Movant testified that she did not disclose her race on her employment application with Champs Sports. Further, when asked about her race during a job interview she declined to discuss the subject.

Shortly after movant was hired, she attended an employee gathering where allegedly the store manager showered her with "glowing praise" about her work performance and ability to overcome adversity. However, by November 1996, she states that the store manager's attitude towards her had changed dramatically. Movant alleges the attitude change was because the store manager had discovered she was black.

Movant states that Manuel Connell discovered that she was black after observing repeated visits to the store by movant's black friends and relatives. At one point, movant received a visit from a black male friend at the store. The store manager witnessed this and allegedly commented to her that "she only dated black men." Subsequently, movant claimed the store manager's negative comments to her about blacks became persistent and more severe. In a matter of days following the store manager's attitude change towards her, movant alleges that he hired Ness, a white male, as a part-time sales associate.

Movant contends that Ness was initially hired only for the Christmas holiday rush. Shortly after being hired, however, Ness was provided with training materials used by full-time management trainees, the position movant held at the time. She alleges that between November and the end of December 1996, Ness received special treatment from the store manager that included more direct attention and assistance on the training materials than she received. This was coupled with the store manager's willingness to provide Ness more time than her during work hours to

---

**3.** Analogously, in Social Security disability decisions, the regulations presume that the claimant has received the decision not sooner than five days after it was mailed. 20 C.F.R. 422.210(c).

complete training assignments. Movant claimed this special treatment occurred while Ness was only a part-time sales associate, not a full-time management trainee like movant.

During this period, movant alleges that she overheard a conversation between Ness and the store manager, who at the time were examining movant's salary and commission records. Movant contends the store manager, remarking about how much money she had made, said to Ness that "we need to get her out of here."

Movant stated that when she came to work in early January 1997 she had been moved to a part-time schedule, while Ness was scheduled to work full-time. Because of the number of hours required of a management trainee, this necessarily meant that Ness had been promoted to her former position while she had been demoted to a part-time sales associate position.

Movant testified that her demotion was not a result of any work-related performance problems, and she contends that Ness was promoted because he was a white male and she was a black female.

She alleges that along with discrimination based on race, the store manager also discriminated against her based on gender. She states that he continually made negative comments to her about women's ability to hold management positions. On one occasion, movant claims, he remarked that "men handle stores better than women ... women are too soft and not tough enough to get the job done ... they're always having babies and needing time off to deal with female problems." Movant alleges that the store manager made this statement to her because, at the time, she had just returned to work following breast surgery.

## B. Movant's Financial Condition

Mitchell testified that she was unemployed and stated that she had filed for unemployment benefits but, as of the hearing date, she had not received any. Movant is responsible for her three minor children, one of whom is disabled. She receives approximately $945.00 per month from a combination of child support and social security. Movant reports $25.00 in a bank checking account and no other cash-on-hand. She has an outstanding liability of $4,217.00 that she makes monthly payments of $118.00 per month. Movant stated that she could not afford to pay the $150.00 filing fee to initiate this suit because her bills consume 100% of disposable income.

## C. Movant's Efforts to Secure Counsel

Mitchell consulted three attorneys about her case. She spoke with Pamela Williams, Doug Sykes and Robert Smith, but because of the economic risk entailed in prosecuting a discrimination case, all three attorneys were unwilling to represent her on a contingency fee basis. She reports that she could not afford to pay a retainer fee.

## IV. THE EEOC RECORD

Champs Sports is not before the court. The EEOC record, however, contains the company's response to the EEOC investigation. In its response, Champs Sports disputed many of Mitchell's allegations.

Champs Sports claimed that in December 1996, movant approached the store manager, Mr. Connell, and complained that her work schedule did not leave her enough time for family and friends. She requested a decrease in her scheduled hours. As a result, Champs Sports alleged that Mitchell was given a part-time position. Thus, movant actually initiated her own demotion by requesting to work less than the thirty-hour-work-week required of management trainees.

Further, Champs Sports alleged that plaintiff was eventually terminated because she proved undependable, dishonest and let personal problems interfere with work. As evidence of these problems, Champs Sports cited portions of Mitchell's

employee file. In it, there are two warnings about her job performance. In one she was warned about tardiness; the other indicates that she fabricated a schedule to cover for her absenteeism and tardiness. There are also numerous notations in the file regarding absenteeism.

Champs Sports claims that they were extremely accommodating toward movant throughout her employment. Champs Sports cites one particular example: In March 1996, movant acquired part-time employment with HEB grocery store as a cashier. To accommodate her other work schedule, Champs Sports alleges that the store manager contacted HEB grocery store and obtained movant's schedule from them; he then scheduled her Champs Sports hours around those she was obligated to work at HEB.

Mitchell now disputes these facts. Movant denies Champs Sports' contention that it accommodated her HEB work schedule. Mitchell states that when she first began working at HEB, to alleviate potential conflicts, she requested that Champs Sports provide her with a fixed work schedule. She contends that the store manager denied this request. Further, she testified that she never requested part-time work permanently. She does admit, however, that she asked to work less hours around Christmas to finish shopping and be with her family. Mitchell also disputes the store's allegations of absenteeism and tardiness. She stated that on many occasions she would arrive at work on time only to find that the store was still locked and no other employees were present. Additionally, she recited that several times the store manager informed her that the store was not busy and it was not necessary for her to come to work. Finally, Mitchell disputes the store's allegation that she had falsified her schedule. She claims that at the time of the alleged falsification, she was not present at the store.

## V. MOTION TO PROCEED IN FORMA PAUPERIS

■ An affidavit in support of a motion to proceed *in forma pauperis* is suffi-cient if it states that, due to poverty, one cannot afford to pay the costs of legal representation and still provide for herself and her dependents. *See Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 69 S.Ct. 85, 93 L.Ed. 43 (1948). While one need not be absolutely destitute to qualify for *in forma pauperis* status, such benefit is allowed only when a movant cannot give such costs and remain able to provide for herself and her dependents. *Id.* at 339, 69 S.Ct. at 89; *see also, Ryan v. Ramsey*, 936 F.Supp. 417, 425 (S.D.Tex.1996).

■ Mitchell is unemployed but does receive a monthly income from child support and social security payments of approximately $945.00. Her expenses, including a loan payment of $118.00, appear to leave her with no surplus. Mitchell reports no material assets.

Mitchell should be allowed to proceed *in forma pauperis*. Her monthly income of approximately $945.00, in light of her living expenses and financial obligations, suggests that she cannot pay court costs and continue to provide for herself and her minor children. The motion to proceed *in forma pauperis* should be granted.

## VI. MOTION TO APPOINT COUNSEL

### A. Legal Standards

■ A civil litigant, proceeding under Title VII, has no absolute right to appointed counsel. *See* 42 U.S.C. § 2000e–5(f)(1); *see also, Salmon v. Corpus Christi I.S.D.*, 911 F.2d 1165, 1166 (5th Cir.1990); *Freeze v. Griffith*, 849 F.2d 172, 175 (5th Cir. 1988). Rather, the decision to appoint counsel is left within the sound discretion of the trial court. *See Gonzalez*, 907 F.2d at 579; *Caston v. Sears, Roebuck and Co.*, 556 F.2d 1305 (5th Cir.1977).

■ In this Circuit, three factors are relevant in the decision to appoint counsel: (1) whether the movant has the financial

ability to retain counsel, (2) whether the movant has made a diligent effort to retain counsel, and (3) whether the movant presents a meritorious claim. *See Gonzalez v. Carlin,* 907 F.2d 573, 580 (5th Cir.1990); *Neal v. IAM Local Lodge No. 2386,* 722 F.2d 247, 250 (5th Cir.1984); *Caston v. Sears, Roebuck & Co.,* 556 F.2d 1305, 1309 (5th Cir.1977).

## B. Discussion

### 1. Ability to Afford Counsel

■ A movant's ability to afford counsel is measured by a more lenient standard than that required to qualify for *in forma pauperis* status. *See Ivey v. Board of Regents,* 673 F.2d 266 (9th Cir.1982). A movant need only show insufficient assets and income to afford an attorney to investigate a claim.

■ As previously noted, Mitchell reports a monthly income of $945.00. She does not appear to have the financial resources to hire a lawyer. Alternatively, she does not report sufficient liquidity to provide the up-front cash necessary to retain one, a prerequisite with all the attorneys she consulted. This factor weighs in favor of granting her motion for appointed counsel.

### 2. Efforts to Secure Counsel

■ A movant's efforts to secure counsel must be "reasonably diligent" under the circumstances. *See Bradshaw v. Zoological Soc'y,* 662 F.2d 1301 (9th Cir.1981). A reasonably diligent attempt to secure counsel means, at a minimum, speaking to an attorney about the merits of the case and pursuing a contingent fee arrangement. *See Caston,* 556 F.2d at 1309.

Mitchell testified that she spoke with three attorneys about her case. Further, she spoke all three regarding the possibility of a contingency fee arrangement. Such efforts were reasonably diligent. This factor weighs in favor of granting the motion for appointed counsel.

### 3. Merits of Mitchell's Claims

■ Evaluation of the merits of a *pro se* litigant's claims is most important, especially to avoid prosecution of a patently frivolous action. Nevertheless, because Mitchell is proceeding *pro se,* the court interprets her complaint liberally. *See Pena v. United States,* 122 F.3d 3, 4 (5th Cir.1997); *Nerren v. Livingston Police Dep't,* 86 F.3d 469, 472 n. 16 (5th Cir.1996).

■ A *sua sponte* review as to the merits of a movant's complaint is closely akin to a frivolousness review under the general *in forma pauperis* statute. *See* 28 U.S.C. § 1915(e)(2) (1998). The complaint is frivolous under section 1915 if it lacks an arguable basis in law or fact, or the claim's chance of success is slight. *Hicks v. Garner,* 69 F.3d 22, 24 (5th Cir.1995); *Gartrell v. Gaylor,* 981 F.2d 254, 256 (5th Cir.1993).

■ In making its evaluation, the court must weigh all facts in a movant's favor. This necessarily means the court should accept movant's allegations as true, unless they rise to the level of being wholly irrational or incredible. *See Denton,* 504 U.S. at 33, 112 S.Ct. at 1733. Weighing facts in a movant's favor also means the court should grant movant all reasonable inferences of her factual contentions. *See Johnson v. Rodriguez,* 943 F.2d 104, 107 (1st Cir.1991). Therefore, if a movant asserts a recognized legal theory, and facts supporting such a claim, the claim is not wholly frivolous and should survive frivolousness review under section 1915. *See Denton,* 504 U.S. at 33, 112 S.Ct. at 1733.

Mitchell's complaint, supplemented by her sworn testimony, makes out a prima facie discrimination case by alleging that (1) she is within a protected class, (2) she was demoted from a job for which she was qualified, and (3) her position remained open or was filled by someone outside of the protected class. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Grimes v. Texas Dept. Mental Health &*

*Mental Retardation,* 102 F.3d 137, 140 (5th Cir.1996).

As noted, Mitchell alleges that she initially received praise from Mr. Connell, but was treated negatively and discriminated against when he discovered in November 1996, that she was black. In January 1997, movant claims that this treatment culminated in her involuntary demotion from full-time management trainee to part-time sales associate. She further alleges that Ness, a white male, replaced her in the trainee program. One possible explanation for how this happened, she claims, is that Ness was given preferential treatment by the store manager while participating in the management training program, thus providing him with the necessary skills by which he could replace her. This dissimilar treatment appears on its face unequal treatment. It is sufficient to raise a question of fact as to whether her termination was discriminatory.

Because Mitchell's allegations, if proven, would likely establish intentional discrimination and support a verdict in Mitchell's favor, her claim has probative merit.

It is unknown, of course, what facts movant can prove at a plenary adversarial trial. However, from the brief facts ascertained at the hearing, it is clear that movant's success is far from assured. A number of purported facts in the EEOC record dispute her allegations. For example, the white employee that she alleges replaced her for discriminatory reasons was terminated a month-and-a-half after his promotion for violating company attendance policy. This occurred well before movant was terminated and is strong evidence that racial discrimination was not the motive behind her demotion.

Also, Champs promoted another female to full-time manager in January 1997, the same time movant was allegedly switched to a part-time position. This argues against gender discrimination. Finally, the EEOC record documents numerous instances where the employer showed flex-ibility towards the movant by adapting the store's schedule to fit her needs. Again, neither racial or gender discrimination seems likely if these facts are proven.

However, at this stage of the proceedings the court cannot weigh the evidence or make credibility judgments. For purposes of the pending motions only, the court must accept the facts presented by Mitchell as true on their face. Thus, this factor weighs in favor of granting the motion for appointed counsel.

## CONCLUSION

The motion for appointed counsel should be granted. All three factors suggest that counsel should be appointed in the instant case, with the paramount factor, the merits of Mitchell's allegations, weighing in favor of granting the motion. Given the difficulty of proving intentional race discrimination and the movant's unfamiliarity with legal proceedings, counsel is necessary to adequately prosecute this action.

■ If after a conscientious examination of the record, counsel finds movant's case to be wholly frivolous, counsel should advise the court and request permission to withdraw. *See Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). This request should be accompanied by a brief referring to anything in the record that might arguably support movant's case. *See United States v. Wagner,* 158 F.3d 901, 1998 WL 744000 (5th Cir. 1998) (the brief should explain the nature of the case and fully discuss the issues involved).

## RECOMMENDATION

The motion to proceed *in forma pauperis* should be granted. The motion for court appointed counsel should be granted, provided that appointed counsel may submit an *in camera* "Anders brief" and request to be excused should it become obvious that this action is frivolous or has little chance of success on the merits.

## OBJECTIONS

Objections must be (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); FED. R.CIV.P. 6(a), 6(b), 72(b).

A party's failure to object bars that party from (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).